# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 23, 2012

No. 11-40789

Lyle W. Cayce
Clerk

M.D., by next friend Sarah R. Stukenberg; D.I., by next friend Nancy G. Pofahl; Z.H., by next friend Carla B. Morrison; S.A., by next friend Javier Solis; A.M., by next friend Jennifer Talley; J.S., by next friend Anna J. Ricker; K.E., by next friend John W. Cliff, Jr.; D.P., by next friend Karen J. Langsley; T.C., by next friend Paul Swacina,

Plaintiffs-Appellees

v.

RICK PERRY, in his official capacity as Governor of the State of Texas; THOMAS SUEHS, in his official capacity as Executive Commissioner of the Health and Human Services Commission of the State of Texas; HOWARD BALDWIN, in his official capacity as Commissioner of the Department of Family and Protective Services of the State of Texas,

Defendants-Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before GARZA, CLEMENT, and SOUTHWICK, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiffs-Appellees, nine children ("Named Plaintiffs") in the custody of Texas's Permanent Managing Conservatorship ("PMC"), acting through their next friends, filed suit under 42 U.S.C. § 1983 against three Texas officials, in their official capacities, seeking to represent a class of all children who are now and all those who will be in the State's PMC, *i.e.*, long-term foster care.  The

No. 11-40789

Named Plaintiffs sought declaratory and injunctive relief to redress alleged class-wide injuries caused by systemic deficiencies in Texas's administration of the PMC. The district court granted class certification. We VACATE the district court's class certification order for failure to comply with Federal Rule of Civil Procedure 23 and REMAND for further proceedings consistent with this opinion.

I

A

The Named Plaintiffs filed suit against (1) Governor Rick Perry, in his official capacity, (2) Thomas Suehs, in his official capacity as Executive Commissioner of the Texas Health and Human Services Commission, and (3) Thomas Baldwin, in his official capacity as Commissioner of the Texas Department of Family and Protective Services ("DFPS") (collectively, "Texas"). The complaint asserts claims for relief under 42 U.S.C. § 1983, alleging that Texas has violated the constitutional rights of each of the approximately 12,000 children in its PMC due to various "systemic failures" in the "unitary system" that administers the State's PMC.

The gravamen of the Named Plaintiffs' complaint is that various system-wide problems in Texas's administration of its PMC—such as a failure "to maintain a caseworker staff of sufficient size and capacity to perform the tasks critical to [the] safety, permanency, and well-being" of the purported class members—subject all of the children in the PMC to a variety of harms. Based on these allegations, the Named Plaintiffs claim that the "actions and inactions of [Texas]" violated the purported class members' (1) substantive due process rights to be free from harm while in state custody under the Fourteenth Amendment, (2) liberty interests, privacy interests, and associational rights not to be deprived of a child-sibling or child-parent family relationship where safe and appropriate, under the First, Ninth, and Fourteenth Amendments, and (3) procedural due process rights under the Fourteenth Amendment by depriving

2

No. 11-40789

them of alleged state law entitlements, relating to monitoring by DFPS of contracted substitute care, TEX. FAM. CODE § 264.106(b); TEX. HUM. RES. CODE § 45.002(c), and the right to have placement decisions be made using "clinical protocols to match a child to the most appropriate placement resource." TEX. FAM. CODE § 264.107(e).   The Named Plaintiffs request broad, classwide declaratory and injunctive relief against Texas to redress the harms caused by the State's alleged systemic failures to properly manage the PMC.

Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), the Named Plaintiffs moved the district court to certify a class of "all children who are now and all those who will be in the [PMC] of Texas's [DFPS]."   Texas opposed class certification, contending that the proposed class did not meet the requirements of Rule 23.   The district court granted the Named Plaintiffs' motion for class certification.  This court subsequently granted Texas's petition for permission to appeal.  *See* FED. R. CIV. P. 23(f).

"We review the district court's decision to certify a class for an abuse of discretion." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003) (citing *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003)). "Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007) (quoting *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004)).   However, the district court must exercise its "broad discretion" over whether to certify a class "within the framework of Rule 23." *McManus*, 320 F.3d at 548 (citation omitted).   "We review *de novo* whether the district court applied the correct legal standards." *Maldonado*, 493 F.3d at 523 (citation omitted).

3

No. 11-40789

B

Texas administers its foster care system through the combined efforts of state agency officials and state courts. After investigating a report that a child has been abused or neglected, DFPS can seek to remove a child from his parents and/or establish Temporary Managing Conservatorship ("TMC") over the child, usually by court order in a suit affecting the parent-child relationship ("SAPCR"). TEX. FAM. CODE § 262.201. If the court orders that DFPS retain TMC over a child, Texas Family Code § 263.401(a) generally requires that the SAPCR must be dismissed within one year of the court's order placing the child in the State's TMC, "[u]nless the court has rendered a final order or granted an extension." While a child remains in the State's TMC, DFPS is required to file a service plan and a permanency plan with the court (1) describing the steps needed to provide a permanent safe placement for the child and (2) reporting progress toward that end. *Id.* §§ 263.101–.102; *id.* §§ 263.3025–.303. Before the statutory deadline for dismissing a SAPCR, the court must hold a final hearing where it may terminate parental rights, place the child in DFPS's PMC, grant a relative PMC without terminating parental rights, or return the child to the parents. *Id.* §§ 161.001, 263.404.

After a child enters DFPS's PMC, the agency and state courts continue to jointly administer and monitor the state's conservatorship over the child. DFPS is charged with providing the child with substitute care, including residential care and supportive and therapeutic services. 40 TEX. ADMIN. CODE §§ 700.1301–.1302. State law also directs DFPS to engage in permanency planning for children in its PMC in order to meet the child's safety, permanency, and well-being needs. *Id.* § 700.1201; TEX. GOV'T CODE §§ 531.151–.152. While the child remains in DFPS's PMC, state courts must hold periodic placement review hearings to consider, *inter alia*, whether the child's current placement is necessary, safe, and appropriate, whether DFPS has been diligent in attempting

4

No. 11-40789

to place the child for adoption if eligible, whether efforts have been made to place the child in the least restrictive environment if the child has been placed in institutional care, and, whether DFPS has made reasonable efforts to finalize the effective permanency plan for the child. TEX. FAM. CODE §§ 263.502–.503.[1]

The Named Plaintiffs have all been placed in Texas's PMC and seek certification of a class of all children who are or will be in the State's PMC.

II

A

"To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Maldonado*, 493 F.3d at 523 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997)). The Named Plaintiffs, as the parties seeking certification, bear the burden of proof to establish that the proposed class satisfies the requirements of Rule 23. *McManus*, 320 F.3d at 548 (citation omitted); *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

The requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[1] The State has charged DFPS with redesigning its foster-care system in accordance with the recommendations contained in the Foster Care Design Report. The Report recommends a host of wide-ranging reforms to the State's foster care system. Act of May 25, 2011, 82d Leg. R.S., ch. 598, § 11, 2011 Tex. Sess. Law Serv. 1445.

No. 11-40789

The Named Plaintiffs only sought certification under Rule 23(b)(2). Thus, assuming the proposed class satisfied the requirements of Rule 23(a), it also had to establish that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2).

It is well-established that "[a] district court must conduct a rigorous analysis of the [R]ule 23 prerequisites before certifying a class." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). We have traditionally construed this directive to require district courts to, *inter alia*, "look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'" *McManus*, 320 F.3d at 548 (quoting *Castano*, 84 F.3d at 744). In its recent opinion in *Wal-Mart Stores, Inc. v. Dukes*, which was decided after the district court granted certification in this case, the Supreme Court has further defined the contours of the "rigorous analysis" required by Rules 23(a) and 23(b)(2). 131 S. Ct. at 2551–52. We will consider whether the district court complied with the requirements of Rule 23 in light of the Supreme Court's instructions in *Wal-Mart*.

B

On appeal, Texas makes three primary arguments. First, it contends that the district court abused its discretion by certifying the purported class because the Named Plaintiffs failed to establish that there were any "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). In order to satisfy commonality under *Wal-Mart*, a proposed class must prove that the claims of every class member "depend upon a common contention . . . . that is capable of classwide resolution," meaning that the contention is "of such a nature . . . that determination of its truth or falsity will resolve an issue that is central to the

6

No. 11-40789

validity of each one of the claims in one stroke." 131 S. Ct. at 2551. The State asserts that none of the class claims satisfy this standard. Instead, it maintains that each of the class member's claims require individualized determinations of various issues of law and fact. Similarly, Texas asserts that the proposed class does not satisfy Rule 23(a)'s typicality requirement because the alleged harms suffered by the Named Plaintiffs are not experienced by a majority of the purported class and because the class claims require individualized inquiries.

Second, Texas maintains that the district court failed to conduct the "rigorous analysis" required by Rule 23. In particular, the State asserts that the district court "failed to define with any specificity the class claims, class issues, or defenses, nor . . . describe how those claims would be tried on behalf of over 12,000 PMC children." It further contends that the district court failed to consider whether the class claims depend upon a common contention of law or fact whose determination would "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Lastly, Texas contends that the proposed class does not satisfy the cohesiveness requirement of Rule 23(b)(2). The State asserts that the class is not entitled to classwide injunctive relief under Rule 23(b)(2) because (1) the class members have not "been harmed in essentially the same way," *Maldonado*, 493 F.3d at 524, and (2) "a single injunction or declaratory judgment" could not "provide relief to each member of the class." *Wal-Mart*, 131 S. Ct. at 2557.

C

Applying the standards announced in *Wal-Mart* for establishing commonality under Rule 23(a)(2), we hold that the district court failed to conduct the "rigorous analysis" required by Rule 23 in deciding to certify the proposed class. Similarly, we hold that the district court abused its discretion by certifying a class that lacked cohesiveness under Rule 23(b)(2). We will first consider the district court's decision finding that the proposed class satisfied

7

No. 11-40789

commonality under Rule 23(a)(2) and then consider its finding that a single injunction could provide relief to the whole class under Rule 23(b)(2).

1

a

The district court found that the proposed class raised common questions of fact and law, thereby satisfying Rule 23(a)(2)'s commonality requirement.

First, it found that the class claims raised factual questions that "relate not to the individual story of each child, but rather the alleged shortcomings of the DFPS system." *M.D. v. Perry*, No. C-11-84, 2011 WL 2173673, at *5 (S.D. Tex. June 2, 2011). Although the district court acknowledged that each class member experienced the alleged shortcomings in the State's administration of its PMC in a different way, it found that the class satisfied commonality because "[a]ll class members are within the same system and subject to the alleged deficiencies in that system." *Id.* The district court held that "[t]o require more for the 'common question' analysis would run afoul of the Fifth Circuit's dictate that '[t]he test for commonality is not demanding,' and that merely having 'different claims, or claims that may require some individualized analysis, is not fatal to commonality.'" *Id.* (quoting *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001)).

Accordingly, the district court found that the class claims raised the following common questions of fact:

> (1) whether Defendants failed to maintain a caseworker staff of sufficient size and capacity to perform properly, (2) whether Defendants failed to provide sufficient numbers and types of foster care placements necessary to the Plaintiffs' needs, (3) whether Defendants provided sufficient monitoring and oversight to prevent abuse while in state custody, and (4) whether Defendants' actions in general caused harm or risk of harm to Plaintiffs.

*Id.*

No. 11-40789

Further, the district court found that the proposed class claims raised common questions of law. The district court rejected Texas's contention that the Named Plaintiffs had only succeeded in attempting to "broadly conflate a variety of claims to establish commonality via an allegation of systemic failures." *Id.* at *8 (citation omitted). Holding that it was persuaded by the reasoning of three of our sister circuits, which found that the claims of similar classes of children in or at risk of being in state custody satisfied commonality,[2] the district court concluded that "insofar as the children challenge the scheme for the provision of child welfare services, their claims share a legal basis." *Id.* (quoting *Baby Neal*, 43 F.3d at 61).

Without examining any of the Named Plaintiffs' legal claims with any specificity, the district court then found that the proposed class claims contained "common questions of law, based upon Plaintiffs' claims of constitutional violations, namely substantive and procedural due process, along with associational rights." *Id.*

b

Although the district court's analysis may have been a reasonable application of pre-*Wal-Mart* precedent, the *Wal-Mart* decision has heightened the standards for establishing commonality under Rule 23(a)(2), rendering the district court's analysis insufficient.

In finding that the proposed class satisfied Rule 23(a)(2)'s commonality requirement, the district court relied, in large part, on this circuit's pre-*Wal-*

---

[2] *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188 (10th Cir. 2010); *Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) (per curiam); *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994); *but see J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999) (affirming district court's order denying certification of similar class of developmentally disabled children in the custody of or at risk of being in the custody of New Mexico) ("We refuse to read an allegation of systematic failures as a moniker for meeting the class action requirements. Rule 23(a) requires a common question of law or fact. For a common question of law to exist, the putative class must share a discrete legal question of some kind.").

9

*Mart* case law finding that "[t]he test for commonality is not demanding." *James*, 254 F.3d at 570 (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999)).  Before *Wal-Mart*, the rule in this circuit provided that in order to satisfy commonality "[t]he interests and claims of the various plaintiffs need not be identical.  Rather, the commonality test is met when there is 'at least one issue whose resolution *will affect all or a significant number of the putative class members.*'"  *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (emphasis added) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)).  Further, the court's pre-*Wal-Mart* caselaw held that "[t]he fact that some of the Plaintiffs may have different claims, or claims that may require some individualized analysis, is not fatal to commonality."  *James*, 254 F.3d at 570.

However, in *Wal-Mart*, the Court expounded on the meaning of its precedent providing that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 161).  After *Wal-Mart*, Rule 23(a)(2)'s commonality requirement demands more than the presentation of questions that are common to the class because "'any competently crafted class complaint literally raises common questions.'"  *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 131–32 (2009)).  Further, the members of a proposed class do not establish that "their claims can productively be litigated at once," merely by alleging a violation of the same legal provision by the same defendant.  *Id.*  ("[T]he mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once.").

Instead, the Court held that the claims of every class member must "depend upon a common contention . . . . of such a nature that it is capable of

classwide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*; *see id.* ("'What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceedings to generate common *answers* apt to drive the resolution of the litigation.'") (quoting Nagareda, 84 N.Y.U. L. Rev. at 132). Thus, the commonality test is no longer met when the proposed class merely establishes that "there is 'at least one issue whose resolution *will affect all or a significant number* of the putative class members.'" *Forbush*, 994 F.2d at 1106 (emphasis added) (citation omitted). Rather, Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution "will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551 (emphasis added).

The Court further clarified that a trial court's obligation to perform a "rigorous analysis" before concluding that a class has satisfied the requirements of Rule 23(a) "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*; *see Falcon*, 457 U.S. at 160 ("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. . . . [S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.") (internal citation and quotation marks omitted).

Lastly, after the Court concluded that "proof of commonality necessarily overlap[ped] with the [purported class members'] merits contention that Wal-Mart engaged in a *pattern or practice* of discrimination," the Court probed beyond the plaintiffs' pleadings in an effort to decide if an "examination of all the class member's claims for relief will produce a common answer to the crucial [merits] question *why was I disfavored.*" *Wal-Mart*, 131 S. Ct. at 2552. In doing

so, the Court "focus[ed]" on dissimilarities among the proposed class members "in order to determine whether there is even a single common question." *Id.* at 2556 (internal citation and quotation marks omitted); *see id.* at 2551 ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.") (quoting Nagareda, 84 N.Y.U. L. REV. at 132).

c

Given the foregoing directives in the Court's opinion in *Wal-Mart*, the district court's Rule 23(a)(2) analysis was deficient in several respects.

First, in finding that the proposed class claims raised common questions of fact, the district court failed to consider or explain how the determination of those questions would "resolve an issue that is central to the validity of each one of the [individual class member's] claims in one stroke." *Id.* at 2551. Rather, the district court merely found that the Named Plaintiffs' various allegations of "systemic deficiencies" in the State's administration of its PMC raised common questions of fact.

For instance, the district court found that the class claims raised a common question of fact regarding "whether Defendants failed to maintain a caseworker staff of sufficient size and capacity to perform properly." But the district court's discussion of this "common question" contained no reference to any of the  three causes of action advanced on behalf of the proposed class, nor did the district court "look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination'" of whether this question satisfies commonality. *McManus*, 320 F.3d at 548 (quoting *Castano,* 84 F.3d at 744).  In short, the district court failed to describe how a finding that Texas fails to maintain a caseworker staff that performs "properly" will resolve an issue that is "central to the validity of each one of the [class member's] claims in one stroke." *Wal-*

No. 11-40789

*Mart*, 131 S. Ct. at 2551.  That is, the district court did not indicate how the resolution of the alleged common question of fact would decide an issue that is central to the substantive due process claims, family association claims, or procedural due process claims of every class member at the same time.[3]  Because the remaining common questions of fact found by the district court similarly fail to explain how their resolution would have the capacity to "generate common *answers* apt to drive the resolution of the litigation," they suffer from the same deficiency.  *Id.* (citation omitted); *see Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 503 (5th Cir. 2004) (per curiam) ("[W]e hold that when certifying a class a district court must detail with sufficient specificity how the plaintiff has met the requirements of Rule 23.").

The district court's analysis supporting its finding that the class claims presented common questions of law also failed to comport with the requirements of Rule 23 as outlined in *Wal-Mart*.  Based on the reasoning of other courts in similar cases, the district court concluded that the claims of the proposed class members share a common legal basis because they "challenge the scheme for the provision of child welfare services" and "share the common legal claim that [DFPS's] systematic deficiencies result in widespread violations of their statutory and constitutional rights."  *M.D.*, 2011 WL 2173673, at *8 (citations omitted).  The district court then found "common questions of law, based upon Plaintiffs' claims of constitutional violations, namely substantive and procedural due process, along with associational rights."  *Id.*  But the district court's

---

[3] For instance, it is unclear whether the Named Plaintiffs can even advance a due process claim based on a bare finding that Texas has "organized or managed" DFPS improperly.  *See Lewis v. Casey*, 518 U.S. 343, 349–50 (1996) ("It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution. . . . But the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly.").

13

analysis supporting its finding that the class claims raised common questions of law did not comply with the requirements of Rule 23(a)(2) for several reasons.

First, the formulation of these common questions of law is too general to allow for effective appellate review. The Named Plaintiffs allege that Texas's management of its PMC suffers from numerous "systemic deficiencies" that subject all children in the PMC to various harms or to the risk of experiencing those harms. They further contend that these harms violate the constitutional rights of every child in the PMC in various ways. Faced with the broad scope of the Named Plaintiffs' 85-page complaint and the diverse array of claims asserted therein, the district court's certification of "common questions of law, based upon Plaintiffs' claims of constitutional violations, namely substantive and procedural due process, along with associational rights" lacks the specificity required for us to determine whether the alleged common questions of law satisfy the requirements of Rule 23(a)(2). Some of the Plaintiffs' legal claims may depend on common contentions of law capable of classwide resolution, and some may not. But as it stands, we cannot affirmatively identify the scope of the "common questions of law" found by the district court, let alone determine whether they are capable of classwide resolution under *Wal-Mart*. *See Vizena*, 360 F.3d at 503 (remanding from appeal of order granting class certification for the district court to make appropriate findings).

Moreover, given the substance of the proposed class claims, the district court failed to perform the "rigorous analysis" required by Rule 23 in failing to "look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination'" of whether the alleged questions of law are capable of classwide resolution. *McManus*, 320 F.3d at 548 (quoting *Castano*, 84 F.3d at 744). Specifically, the district court conducted no analysis of the elements and defenses for establishing any of the proposed class claims, nor did it adequately explain how those claims

14

depend on a common legal contention whose resolution "would resolve an issue that is central to the validity of each of [the individual 's] claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.

The district court clearly rejected Texas's argument that the resolution of the class claims depends on individualized factual determinations regarding the circumstances of each class member. Relying on the conclusions of other courts that have certified similar classes, the district court found that the class members' individual issues did not preclude commonality because the class members "share the common legal claim that [a state agency's] systemic deficiencies result in widespread violations of their statutory and constitutional rights." *Perry*, 2011 WL 2173673, at *8 (citing *Baby Neal*, 43 F.3d at 61). However, we conclude that the district court insufficiently analyzed whether the class claims contain individualized issues that prevent certification.

Here, as in *Wal-Mart*, proof of commonality necessarily overlaps with the proposed class's merits contention that systemic deficiencies in Texas's administration of its PMC violate the constitutional rights of every child in the PMC. In such cases, *Wal-Mart* requires district courts to specifically delineate how a class proceeding would allow the court to resolve a discrete question of law whose determination "will resolve an issue that is central to the validity of each of the [individual plaintiff's] claims in one stroke." 131 S. Ct. at 2551. Further, the district court must explain its reasoning with specific reference to the "claims, defenses, relevant facts, and applicable substantive law" raised by the class claims, *McManus*, 320 F.3d at 548 (citation omitted), in order to ensure that "dissimilarities within the proposed class" do not "'have the potential to impede the generation of common answers.'" *Wal Mart*, 131 S. Ct. at 2551 (citation omitted).

The district court failed to meet these requirements by declining to analyze Texas's argument that dissimilarities within the proposed class

precluded commonality with specific reference to the elements or defenses for establishing the class claims. For instance, Texas contends that the individual class member's substantive due process claims are not capable of classwide resolution because deciding each plaintiff's claim requires an individualized inquiry regarding whether the State's conduct "shocks the conscience." Texas's Brief at 41–47 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)) ("[T]he substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'") (quoting *Collins v. Harker Heights*, 503 U.S. 115, 128 (1992)). If the State's assertion is accurate that the resolution of each of the class member's substantive due process claims requires individual analysis,[4] then it is not clear how a "classwide proceeding" on those claims has the "capacity . . . to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551 (citation omitted). In other words, if the merits of each class member's substantive due process claims depend on an individualized inquiry regarding the harm or risk of harm experienced by each class member from the State's practices, then "dissimilarities within the proposed class" would appear to prevent the class claims from asserting a common question of law that "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* (citation omitted). The district court may have properly rejected this argument, but, on remand, it must do so with reference to the elements and defenses and requisite proof for each of the

---

[4] We take no position at this time regarding whether the proper standard to evaluate the proposed class's substantive due process claims requires the State to act with "deliberate indifference" that "shocks the conscience, *see Nicini v. Morra*, 212 F.3d 798, 810 (3d Cir. 2000) (en banc), or that the State's conduct was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 811 n.9 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)).

No. 11-40789

proposed class claims in order to ensure that differences among the class members do not preclude commonality.

Lastly, we note that in the district court's order denying Texas's motion to stay proceedings in the lower court pending the resolution of this interlocutory appeal, it found *Wal-Mart* distinguishable from this case. Specifically it found that the proposed class satisfied commonality because (1) the class alleged injuries caused by common deficiencies in the Texas foster care system and (2) the alleged deficiencies were the "glue" holding the class claims together. *M.D. v. Perry*, No. C-11-84, 2011 WL 7047039, at *1 (S.D. Tex. July 21, 2011) (order denying motion to stay proceedings) (citing *Wal-Mart*, 131 S. Ct. at 2551). On remand, the district court's conclusion may ultimately be a sound application of *Wal-Mart*, however, that conclusion must be supported by reasoning based on the elements for establishing the proposed class's various constitutional claims on a classwide basis. *See Wal-Mart*, 131 S. Ct. at 2553 (discussing methods for bridging gap between individual Title VII claim and the existence of a class of individuals who have suffered the same injury such that their individual claims could be certified under Rule 23(a)); *Jamie S. v. Milwaukee Pub. Schools*, 668 F.3d 481, 497–98 (7th Cir. 2012) (discussing standards for determining whether individual claims under the Individuals with Disabilities Education Act ("IDEA") can be brought together in a class action); *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 326 (D.D.C. 2011) (discussing standards for certifying a class based on a municipal policy that allegedly violated the class's procedural due process rights).

Further, in performing that analysis the district court should consider that the test for commonality "is complicated where, as here, the proffered 'common issue' is a somewhat amorphous claim of systemic or widespread misconduct on the part of the defendant." *Lightfoot*, 273 F.R.D. at 324. We agree that "[m]ere allegations of systemic violations of the law . . . will not automatically satisfy

17

Rule 23(a)'s commonality requirement." *DG*, 594 F.3d at 1195 (citing *J.B.*, 186 F.3d at 1288); *see also Reinholdson v. Minnesota*, No. 02 Civ. 795, 2002 WL 31026580, at *8 (D. Minn. Sept. 9, 2002) ("The reciting of the word 'systemic' in mantra-like fashion . . . does not overcome the prerequisites to class certification."), *vacated in part on other grounds*, 346 F.3d 847 (8th Cir. 2003). Here, the proposed class's proffered common issues "stretch[] the notions of commonality" by attempting to aggregate several amorphous claims of systemic or widespread conduct into one "super-claim." *See Marisol A.*, 126 F.3d at 377 (finding that the purported class had stretched the notion of commonality by aggregating all of the class claims into one "super-claim"); *Lightfoot*, 273 F.R.D. at 326 ("[L]urking behind the rather vague and conclusory statement that Defendants had a 'policy and practice of failing to provide members of the Plaintiff class Due Process,' lies a wide variety of more discrete and particularized practices that could conceivably serve as the foundation for municipal liability.") (internal citation omitted).

Accordingly, given the "amorphousness" of the proposed class's proffered common issues of fact and law, the district court should be particularly precise when explaining how the resolution of those claims "will resolve an issue that is central to the validity of each of the [individual class member's claims] in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. The district court's present certification order failed to do so; thus, we conclude that it failed to perform the "rigorous analysis" that is required in order to find that the proposed class satisfied Rule 23(a)(2)'s commonality requirement.[5]

---

[5] As in *Wal-Mart*, "[i]n light of our disposition of the commonality question . . . it is unnecessary to resolve whether [the proposed class] ha[s] satisfied the typicality requirements of Rule 23(a)." 131 S. Ct. at 2551 n.5.

No. 11-40789

2

a

We further hold that the district court abused its discretion by finding that the proposed class could be certified under Rule 23(b)(2).

Rule 23(b)(2) allows a class action to be maintained when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." We have interpreted this language to create two relevant requirements when a proposed class seeks classwide injunctive relief: (1) the "class members must have been harmed in essentially the same way." *Maldonado*, 493 F.3d at 524 (citing *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000)), and (2) "the injunctive relief sought must be specific." *Id.* (citing FED. R. CIV. P. 65(d)); *see Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F. 3d 185, 198 (5th Cir. 2010) ("[T]his rule seeks to redress what are really group as opposed to individual injuries. The uniformity of the injury across the class is what renders the notice and opt-out provisions of (b)(3) unnecessary.") (internal quotation marks and citation omitted).

In *Wal-Mart*, the Supreme Court further expounded on the requirements of Rule 23(b)(2), determining that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." 131 S. Ct. at 2557; *see id.* ("The key to the (b)(2) class is 'the individual nature of the injunctive or declaratory remedy warranted the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'") (quoting Nagareda, 84

N.Y.U. L. REV. at 132).  For a class certified under Rule 23(b)(2), "the relief sought must perforce affect the entire class at once."  *Id.* at 2558.

The proposed class seeks at least twelve broad, classwide injunctions, which would require the district court to institute and oversee a complete overhaul of Texas's foster care system.  For instance, the Named Plaintiffs sought the following injunctive relief:

> i. Requiring Defendants to ensure that all children in the plaintiff class are assigned DFPS workers whose overall caseloads do not exceed the caseload standards established by the Child Welfare League of America and the Council on Accreditation;
>
> ii. Requiring Defendants to establish, within DFPS, an administrative accountability structure to ensure that all caseworkers, using professionally accepted case practices, fully identify and address Plaintiff Children's need for [] timely permanency; [] placement in the least restrictive, most family-like placements that are suited to their needs; and [] mental health services suited to their needs.

Relying on the *Baby Neal* line of cases, the district court found that the proposed class complied with Rule 23(b)(2) because the relief sought by the Named Plaintiffs would benefit the entire class.  The district court reasoned that because the proposed class alleged that "systemic deficiencies" in the State's PMC violated the constitutional rights of every child in the system, "all of the class members will benefit from relief which forces the defendant to provide, in the manner required by law, the services to which class members either are currently or at some future point will become entitled." *M.D.*, 2011 WL 2173673, at \*14 (quoting *Baby Neal*, 43 F.3d at 63–64).  Accordingly, the district court found that the class could be certified under Rule 23(b)(2) because "most of the injunctive relief aims to improve the DFPS PMC system as a whole, not to afford relief to individual Plaintiffs." *Id.* at \*15.

No. 11-40789

Further, the district court held that even though the Named Plaintiffs requested some forms of relief that would not apply to all class members, "such as the creation of 'expert panels to review the cases of all class members who have had more than four placements,' or 'expert panels to review the cases of all class members who have been in the PMC of the state for more than two years,'" that requested relief was not "fatal to Rule 23(b)(2) certification." *Id.* at *15. The district court found it irrelevant that some of the class's requested relief would not apply to every class member, or even that some of the relief would require individualized analysis and remedies, because all of the class members are in the PMC and would benefit from relief designed to force Texas to administer the PMC, "in the manner required by law." *Id.* at *16.

Texas asserts that the district court abused its discretion by certifying the proposed class under Rule 23(b)(2). It contends that "individual issues overwhelm cohesiveness" because the class members have not been harmed in essentially the same way, thereby preventing the district court from crafting classwide injunctive relief without examining the individual circumstances of class members. Further, it asserts that the class does not meet Rule 23(b)(2)'s requirements because the class members allege that they "are all injured by a smorgasbord of day-to-day, case-by-case operational failures on the part of the state, as opposed to the State's implementation of any specific policy uniformly affecting—and injuring—each child."

b

Although some of the proposed class's sub-claims could potentially be certified under Rule 23(b)(2), its "super-claim" cannot be certified under that subsection because it includes requests for individualized relief on behalf of individual children within several subclasses of the class. In *Wal-Mart*, the Supreme Court, in construing the language of Rule 23(b)(2), held "that, at a minimum, claims for *individualized* relief . . . do not satisfy the Rule." 131 S. Ct.

21

at 2557. Specifically, the Court concluded that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.*

Accordingly, we find that the proposed class claims do not satisfy Rule 23(b)(2) because they include claims for individualized injunctive relief. For instance, the Named Plaintiffs request injunctive relief ordering the formation of "special expert panels to review the cases" of all individual class members in certain subgroups of the class to determine whether their "services" or "permanency" needs were "being adequately addressed and, if not, to implement appropriate remedial steps to seek and secure permanency for [or meet the service needs of] these children." The district court concluded that the claims underlying this requested relief satisfy the requirements of Rule 23(b)(2) because the relief (1) was intended to remedy the State's systemic failure to adequately consider the class member's needs and (2) would benefit all children in the PMC by improving the State's foster care system. We disagree.

The requested "special expert panel" relief undermines the Named Plaintiffs' argument that all of their claims seek to remedy "group as opposed to individual injuries." *Casa Orlando*, 624 F. 3d at 198. By requesting an injunction creating a "special expert panel" to review the cases of individual class members and then "implement appropriate remedial steps" to remedy their individual injuries, the Named Plaintiffs have attempted to remove any force from the doctrine precluding certification "when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Wal-Mart*, 131 S. Ct. at 2557; *see id.* at 2558 (holding that for a class certified under Rule 23(b)(2), "the relief sought must perforce affect the entire class at once"); *see also Shook v. Bd. of Cnty. Comm'rs*, 543 F.3d 597, 604 (10th

No. 11-40789

Cir. 2008) ("*Shook II*")("A class action may not be certified under Rule 23(b)(2) if relief specifically tailored to each class member would be necessary to correct the allegedly wrongful conduct of the defendant.") (citation omitted).[6]

A proposed class cannot avoid Rule 23(b)(2)'s prohibition on claims for individualized relief by petitioning the district court to order the defendant to craft individualized "injunctive-type" relief for certain class members. *See Jamie S.*, 668 F.3d at 499 (holding that proposed injunctive relief did not satisfy Rule 23(b)(2) when the district court's order "would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only, and it would certainly not be final"). Accordingly, we find that the requested individual relief implicitly establishes that at least some of the proposed class's underlying claims allege individual injuries that are not uniform across the class; thus, as currently pleaded, the proposed class lacks cohesiveness to proceed as a 23(b)(2) class. *Maldonado*, 493 F.3d at 524–25 (holding district court did not abuse its discretion in denying class certification under Rule 23(b)(2) because "individualized issues here overwhelm class cohesiveness").

On the other hand, we do not necessarily agree with Texas's argument that the proposed class can only be certified under Rule 23(b)(2) if its claims are premised on a "specific policy [of the State] uniformly affecting—and injuring—each child." Rather, the class claims could conceivably be based on an allegation that the State engages in a pattern or practice of agency action or inaction—including a failure to correct a structural deficiency within the agency, such as insufficient staffing—"with respect to the class," so long as declaratory

---

[6] Our holding is not intended to limit a district court's ability to appoint special masters or other parties to monitor a defendant's compliance with qualifying court-ordered classwide relief, *see Ayers v. Thompson*, 358 F.3d 356, 365 nn.8–9 (5th Cir. 2004), or to prevent courts from fashioning more specific relief in the face of a defendant's failure to comply with a court's earlier orders. *See Wyatt v. Aderholt*, 503 F.2d 1305, 1309–10 (5th Cir. 1974).

or injunctive relief "settling the legality of the [State's] behavior with respect to the class as a whole is appropriate." FED. R. CIV. P. 23(b)(2) 1966 Amendment advisory committee note; *see id.* ("Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.").[7] *See also DG*, 594 F.3d at 1201 ("Here the 'grounds' that have general application to the class are that all class members have been placed in [Oklahoma's] foster care program and, as such, caseworkers monitor all class members in a system that allegedly fails to ensure they do not carry caseloads so demanding that they cannot monitor class members adequately.").

However, that relief must comply with the requirements of Rule 23(b)(2). In addition to demonstrating that the requested relief does not require individualized determinations and that the class members "have been harmed in essentially the same way," *Maldonado*, 493 F.3d at 524, we find that Named Plaintiffs must make an "effort to give content to what it would mean to provide adequate . . . or 'appropriate' levels of services" so that "final injunctive relief may be crafted to 'describe in reasonable detail the acts required.'" *Shook II*, 543 F.3d at 605–06 (citations omitted); *see id.* ("The problem in our case is that plaintiffs have eschewed any effort to give content to what it would mean to provide adequate mental health staff, adequate screening, or an adequate system of mental education.").

---

[7] Indeed, it is not clear how several of the State's alleged failures, such as its failure to (1) maintain sufficient licensing standards for its placements, (2) maintain an adequate number and array of placements, or (3) employ a sufficient number of caseworkers, can be considered "day-to-day, case-by-case operational failures."

No. 11-40789

III

The common thread running through the proposed class's current deficiencies under both Rule 23(a)(2) and 23(b)(2) is that it has attempted to aggregate a plethora of discrete claims challenging aspects of Texas's PMC into one "super-claim." Yet the only element that these various claims unequivocally share is that they allege the State's administration of the PMC harms or presents a risk of harm to some children in the class. Given the complexity of performing the required "rigorous analysis" under Rule 23 when faced with such an "amorphous" super-claim, we note that the Second Circuit directed the district court in a similar case to certify subclasses under Rule 23(c)(4) on remand.[8]  *Marisol A.*, 126 F.3d at 378 (holding that each of the certified subclasses actually "consists of smaller groups of children, each of which has separate and discrete legal claims pursuant to particular federal and state constitutional, statutory, and regulatory obligations of the defendants").

Although we take no position regarding whether the district court should certify subclasses on remand, we note that if the district court decides to do so, it should (1) perform a rigorous analysis regarding whether the class claims of each of the subclasses meets the requirements of Rule 23 and (2) comply with the instructions for certifying subclasses contained in *Marisol A. See id.* at 378–79.[9]  Lastly, if the district court decides to certify subclasses, it should

---

[8] We acknowledge that the *Marisol A.* court found that the district court did not abuse its discretion by certifying a similar class action. But the court did acknowledge that the proposed class "stretche[d] the notions of commonality and typicality," 126 F.3d at 377, and it was decided before the Supreme Court's opinion in *Wal-Mart.*

[9] We further note that in the only circuit case involving a similar challenge to a State's foster care system, *DG*, 594 F.3d 1188, the district court (1) noted that "many of the questions of fact and law plaintiffs allege to be common do not appear to be, in fact, common," and (2) only explicitly found that the class claims presented one common question of fact and one common question of law. *DG ex rel. Stricklin v. Henry*, No. 08-cv-074-GKF-FHM, at *8–10 (N.D. Okla. May 5, 2009) (order granting motion to certify class).

No. 11-40789

specifically identify the applicable requested relief for each of the certified subclass claims.

## IV

We VACATE the district court's class certification order and REMAND to the district court for proceedings consistent with this opinion.