# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 18, 2017

Lyle W. Cayce
Clerk

No. 16-20505

MARVIN RAY YATES; KEITH COLE; JACKIE BRANNUM; RICHARD ELVIN KING; FRED WALLACE; LAVAR JOHN SANTEE,

Plaintiffs – Appellees,

v.

BRYAN COLLIER; ROBERTO M. HERRERA; TEXAS DEPARTMENT OF CRIMINAL JUSTICE,

Defendants – Appellants.

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This appeal presents yet another chapter in a long saga of challenges to conditions of confinement in prisons throughout this circuit. The plaintiffs are inmates in the Wallace Pack Unit, a prison operated by the Texas Department of Criminal Justice. They allege violations of the Eighth Amendment, the Americans with Disabilities Act, and the Rehabilitation Act due to the high temperatures in the prison housing areas. Plaintiffs sought, and the district court granted, certification of a general class and two subclasses, and the defendants now appeal. Because we conclude that the district court did not abuse its discretion, we AFFIRM.

No. 16-20505

## I.

The six named Plaintiffs are inmates in the Wallace Pack Unit, a prison operated by the Texas Department of Criminal Justice (TDCJ). Plaintiffs brought this lawsuit in 2014 against TDCJ, Bryan Collier (TDCJ's executive director), and Roberto Herrera (the Pack Unit's warden) (collectively, the Defendants). The Pack Unit houses approximately 1,400 inmates. Though portions of the Pack Unit are air-conditioned, it is undisputed that the inmate housing areas are not. During the summer months, indoor temperatures within the Pack Unit housing area can reach 100 degrees and consistently exceed 90 degrees. TDCJ is aware of these high temperatures as it routinely monitors the outdoor apparent temperatures at the Pack Unit during the summer months. Acknowledging that these high temperatures are a potential risk to the health and safety of the inmates in the Pack Unit and in an effort to reduce the risk from these high temperatures, Defendants claim that they provide certain "heat-mitigation" measures—including more frequent showers, cold drinking water, fans, and temporary access to air-conditioned "respite areas" outside the housing area.

Up until this lawsuit was filed, TDCJ's policy regarding mitigation measures remained largely unchanged, despite the heat-related injuries occurring within the Pack Unit and in various other Texas prisons. Indeed, since 1998, twenty or more inmates have died as a result of excessive heat. This history led the district court to conclude that, "as a factual matter," there was a "significant history of serious heat related illnesses" within the Pack Unit. Only in 2015, after this lawsuit was filed, did TDCJ begin its respite-area practice.

Of the six named Plaintiffs, only one is younger than 60 years old and has no medical conditions that would affect his sensitivity to heat. The remaining five named Plaintiffs range in age from 60 to 72 years and all have

2

one or more conditions that render them particularly sensitive to heat, including Type II diabetes, coronary arterial disease, high blood pressure, high cholesterol, hypertension, schizoaffective disorder, and obesity.

Plaintiffs assert two causes of action. First, they assert an Eighth Amendment claim against Collier and Herrera. Second, they claim that TDCJ has failed to provide reasonable accommodations for inmates with heat-sensitive disabilities in violation of the Americans with Disabilities Act and the Rehabilitation Act. Plaintiffs seek a declaratory judgment and a permanent injunction requiring defendants to "maintain a safe indoor apparent temperature (e.g., maintaining a heat index of 88 degrees or lower) inside each of the Pack Unit's housing areas . . . or enter other injunctive relief sufficient to protect the health and safety of the prisoners at the Pack Unit."[1]

Plaintiffs moved to certify three classes, one general class and two subclasses:

> **General Class**: All inmates who currently are, or in the future will be, incarcerated at the Pack Unit, and who are subjected to TDCJ's policy and practice of failing to regulate high indoor heat index temperatures in the housing areas.

> **Heat-Sensitive Subclass**: All people who are incarcerated at the Pack Unit, or in the future will be,  that are subjected to TDCJ's policy and practice of failing to regulate high indoor heat index temperatures in the housing areas, and either: (1) have a physiological condition that places them at increased risk of heat-related  illness, injury, or death (including, but not limited to, suffering from obesity, diabetes, hypertension, cardiovascular disease, psychiatric conditions,  cirrhosis of the liver, chronic obstructive pulmonary disease, cystic fibrosis, asthma, sweat gland dysfunction, and thyroid dysfunction); or, (2) are prescribed an anticonvulsant, anticholinergic, antipsychotic, antihistamine, antidepressant, beta blocker, or diuretic; or (3) are over age 65.

---

[1] Plaintiffs also seek attorneys' fees, but they do not seek damages.

**Disability SubClass**: All people incarcerated at the Pack Unit, or who will be in the future, that are subjected to TDCJ's policy and practice of failing to regulate high indoor heat index temperatures in the housing areas and suffer from a disability that substantially limits one or more of their major life activities and who are at increased risk of heat-related illness, injury, or death due to their disability or any medical treatment necessary to treat their disability.

The district court certified all three classes. It concluded that Plaintiffs sufficiently demonstrated that they met all requirements of Federal Rule of Civil Procedure 23(a). It then determined that certification was authorized under Rule 23(b)(2). Last, the district court rejected Defendants' argument that the Prison Litigation Reform Act—which directs that prospective relief in the prison context "shall extend no further than necessary to correct the violation," 18 U.S.C. § 3626(a)(1)(A)—must be applied as part of the Rule 23(b)(2) analysis.

Defendants moved under Rule 23(f)[2] for authorization to appeal the district court's certification order, and this court granted the motion.

## II.

"We review the district court's decision to certify a class for an abuse of discretion." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 836 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003)). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). This deference stems

---

[2] Fed. R. Civ. P. 23(f) provides:

A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

No. 16-20505

from "a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *Perry*, 675 F.3d at 836. Nonetheless, this broad discretion must operate "within the framework of Rule 23," and we "review *de novo* whether the district court applied the correct legal standards." *Id.* (citations omitted).

## III.

It is well-established in our circuit "that the Eighth Amendment guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures." *Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015). Over the past several years, we have decided numerous appeals arising from cases in which inmates have challenged the heat levels within prisons located throughout this circuit. We have repeatedly upheld district court findings that the heat levels within these prisons violate the Eighth Amendment, and we have done so in the context of a class action in at least one case.

In *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004), we upheld a permanent class-wide injunction based on the Eighth Amendment, which required the Mississippi Department of Corrections to "provide fans, ice water, and daily showers when the heat index is 90 degrees or above," *id.* at 339–40, even though most of the inmates had the benefit of industrial sized fans as well as smaller personal fans. *Id.* at 334. Summer temperatures in the area averaged above 90° Fahrenheit, and the ventilation within the facility was "inadequate to afford prisoners a minimal level of comfort during the summer months," and the inmates were "not afforded extra showers, ice water, or fans . . . when the heat index [was 90° Fahrenheit] or above." *Id.* Similarly, in *Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015), we affirmed the district court's finding that the heat within a prison housing area posed a substantial risk of serious harm to inmates, where the heat index ranged from 81.5° Fahrenheit to 107.79°

Fahrenheit and surpassed 100° Fahrenheit on five or more days during a roughly two week period. *Id.* at 590–91, 592–94. We did so even though the inmates had continued access to potable water and ice, and despite the defendant's argument that "because it provide[d] the remedies [upheld in *Gates*], there can be no Eighth Amendment violation as a matter of law." *Id.* at 590, 592. And in *Blackmon v. Garza*, 484 F. App'x 866 (5th Cir. 2012), we reversed the grant of judgment as a matter of law in favor of TDCJ officials. *Id.* at 874. Though recognizing that TDCJ had taken some remedial steps, such as providing cool ice water three times a day and allowing extra showers, we concluded this was insufficient to justify judgment in TDCJ's favor. We relied in part on the fact that "[t]here was no air-conditioning," "the windows were sealed," the unit "did not have a water fountain," and "the inmates were not able to use personal fans," though there was a large industrial fan available. *Id.* at 871–72.

Indeed, TDCJ officials are, or have been, defendants in numerous other cases alleging Eighth Amendment violations based on excessive heat in prison. *See, e.g.*, *Hinojosa*, 807 F.3d at 661 (deciding appeal involving TDCJ prisoner who suffered a seizure at night due to high indoor temperatures, "[fell] out of his bed and was convulsing," and died twenty minutes later); *Webb v. Livingston*, 618 F. App'x 201, 204 (5th Cir. 2015) (deciding appeal involving the "heat-related deaths of five prisoners who died while housed in facilities operated by [TDCJ]"); *Valigura v. Mendoza*, 265 F. App'x 232, 233–34 (5th Cir. 2008) (deciding appeal involving prisoner who alleged that "temperatures in the bunk area reached into the nineties and hundreds due to poor ventilation" and that "he was not able to use the restroom or showers without lengthy waits, which caused him severe discomfort").

In short, we have repeatedly recognized the serious risk of harm that excessive heat can pose in the prison context absent adequate mitigating

measures, and we have consistently found evidence sufficient in these cases to support an Eighth Amendment violation, even when certain mitigating measures were available. It is against this backdrop that we now address the discrete issue presented in this appeal: whether the district court erred in certifying the General Class and the two subclasses.

Defendants challenge only two of the class certification criteria. First, they assert that the district court erred in concluding that Plaintiffs demonstrated a common question of law or fact for each of the classes.[3] Second, Defendants argue that the district court erred in concluding that the proposed classes could be certified under Rule 23(b)(2). As part of this second argument, Defendants reassert their contention that the Prison Litigation Reform Act precludes certification in this case. We discuss each in turn.

## A.

## 1.

Rule 23(a) states that a class may be certified "only if . . . there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). At first blush, it might seem that Rule 23(a)(2)'s requirement can be easily satisfied. After all, "any competently crafted class complaint literally raises common questions." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (alteration omitted) (quotation marks omitted). As the Supreme Court has indicated, however, Rule 23(a)(2) demands that the putative class members' claims "must depend upon a common contention" that "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the

---

[3] Defendants do not make any argument regarding numerosity, typicality, or adequacy. *See* Fed. R. Civ. P. 23(a).

claims in one stroke." *Wal-Mart*, 564 U.S. at 350; *see also Perry*, 675 F.3d at 840.

Thus, what matters for Rule 23(a) "'is not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.'" *Wal-Mart*, 564 U.S. at 350 (emphasis omitted) (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). It is not enough, then, that plaintiffs "have all suffered a violation of the same provision of law" because laws can be violated in different ways, and so suffering a violation of the same provision of law "gives no cause to believe that all [the plaintiffs'] claims can productively be litigated at once." *Wal-Mart*, 564 U.S. at 350; *Perry*, 675 F.3d at 840 ("Further, the members of a proposed class do not establish that their claims can productively be litigated at once, merely by alleging a violation of the same legal provision by the same defendant." (quotation marks omitted)).

"Rule 23 does not set forth a mere pleading standard." Instead, a plaintiff "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* . . . common questions of law or fact[.]" *Wal-Mart*, 564 U.S. at 350. And the district "must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Perry*, 675 F.3d at 837 (alteration omitted) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)); *Wal-Mart*, 564 U.S. at 350–51 (same). Because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," *Wal-Mart*, 564 U.S. at 351, we have "traditionally construed [the] directive [to conduct a rigorous analysis] to require district courts to, *inter alia*, 'look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the

certification issues.'" *Perry*, 675 F.3d at 837 (quoting *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003)); *see also Wal-Mart*, 564 U.S. at 350–51 (same).

## 2.

The district court concluded that Plaintiffs had demonstrated the existence of "questions of law or fact common" to the General Class and the subclasses. *See* Fed. R. Civ. P. 23(a)(2). For the General Class, the district court identified the following common questions: (1) "that excessive heat constitutes a condition of confinement that poses a substantial risk of serious harm to the health of all inmates"; and (2) "that TDCJ officials were deliberately indifferent to the risk posed to the inmates." Further, the district court concluded that the "heat-sensitive subclass has the same common contentions as the General Class, but the subclass must only prove a substantial risk of serious harm, and deliberate indifference, to the inmates with heat sensitivity." Finally, as to the disability subclass, the district court stated that "[o]ne additional common contention of the disability subclass is that TDCJ officials failed to provide reasonable accommodations to inmates suffering from disabilities that may impact (or that cause the inmates to take medication that may impact) their ability to withstand extreme heat."

### i. General Class

Defendants' overarching objection to the district court's certification of the General Class focuses on the first common contention—that "excessive heat constitutes a condition of confinement that poses a substantial risk of serious harm to the health of inmates." Defendants do not contest that putative class members are all exposed to essentially the same temperatures. Defendants also do not contest that Pack Unit temperatures, particularly in the summer months, are often extreme. Nor do they contest that, absent mitigation measures, *every inmate* in the Pack Unit is at a substantial risk of

serious harm due to the heat. They do contest, however, the ability to decide the substantial-risk-of-serious-harm question "in one stroke," *Wal-Mart*, 564 U.S. at 350, in light of the various heat mitigation measures that TDCJ makes available to Pack Unit inmates.

Specifically, Defendants assert that the efficacy of TDCJ's heat-mitigation measures to reduce the risk of serious harm to a constitutionally acceptable level will largely depend on the age and health of each particular individual—for the young and healthy, they may; for the old and sick, they may not. And because the Pack Unit inmate population is diverse in both age and health, it is impossible to determine all at once whether the excessive heat in the Pack Unit "constitutes a condition of confinement that poses a substantial risk of serious harm to the health of all inmates." So, Defendants assert that in order for this question to be "common" for Rule 23(a) purposes Plaintiffs were required to prove "that even the youngest, healthiest, and most acclimatized inmates face a substantial threat of serious harm *despite* TDCJ's existing heat-mitigation measures."

The district court made precisely this finding. It acknowledged that "[n]o two individuals have the exact same risk." Nonetheless, it concluded that this "obvious fact [does not] destroy[ ] commonality" because "[t]he evidence calls into serious question the adequacy of TDCJ's mitigation measures—as applied in practice—*in reducing the heat risk for all the inmates*, and particularly those with comorbidities that diminish their ability to thermoregulate." In other words, the district court found, based on the expert testimony, that TDCJ's heat-mitigation measures—more frequent showers, cold drinking water, fans, and temporary access to air-conditioned "respite areas"—were ineffective to reduce the risk of serious harm to a constitutionally permissible level for *any* inmate, including the healthy inmates, and the Defendants concede the existence of a common question under these circumstances. Thus, in order to

prevail, the Defendants must demonstrate that the district court's factual finding is clearly erroneous.[4]

"A finding of fact is 'clearly erroneous' only when although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Westwego Citizens for Better Gov't v. City of Westwego*, 946 F.2d 1109, 1118 (5th Cir. 1991) (citing *Campos v. City of Baytown, Texas*, 840 F.2d 1240, 1243 (5th Cir. 1988)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse . . . even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *In re Omega Protein, Inc.*, 548 F.3d 361, 367 (5th Cir. 2008).

We conclude that the district court did not clearly err. The district court personally toured the Pack Unit and held a four day evidentiary hearing, resulting in thousands of pages of expert testimony and other evidence from both sides related to the heat impact on the inmates in the Pack Unit. During the hearing, Plaintiffs put forward two experts—Dr. McGeehin and Dr. Vassallo—who testified regarding the inadequacies of the TDCJ heat-mitigation measures. Dr. McGeehin was previously the lead scientist with the Center for Disease Control (CDC) regarding health effects from extreme heat and heat waves; he has over fifteen years of experience in this area. Dr. Vassallo is a licensed physician and a recognized expert in the field of thermoregulation and hyperthermia, with over twenty-five years treating heat stroke and heat-related disorders. Dr. Vassallo has previously served as an

---

[4] Defendants argue that the district court stopped short of finding that TDCJ's heat-mitigation measures were ineffective as to all inmates by concluding only that the evidence called their effectiveness into "serious question." We conclude that the district court's opinion can only fairly be read as concluding that TDCJ's heat-mitigation measures are ineffective to sufficiently reduce the risk of serious harm as to all inmates.

expert witness in lawsuits challenging prison conditions, and this court has (at least) twice upheld district court findings that relied heavily on Dr. Vassallo's testimony. *See Ball*, 792 F.3d at 593–94; *Gates*, 376 F.3d 339–40.

Dr. McGeehin testified that while showers are helpful "for the short term," "giving a person a shower and then putting them back into a very hot, humid environment has limited effect." Likewise, Dr. Vassallo testified that "taking extra showers" did not reduce the health risks of extreme heat to a "statistically significant" degree. This conclusion was supported by peer-reviewed studies included in the record, indicating that "[t]aking extra showers or baths and using fan ventilation during a heat wave were associated with a trend toward lower risk of death *but were not statistically significant.*"

Dr. McGeehin's testimony relied on peer-reviewed publications indicating that while fans may have a mitigating effect, they are actually counterproductive at higher temperatures: "Although fans provide a cooling effect by evaporating sweat, fan use can pose a significant risk when the heat index exceeds . . . 99 degrees Fahrenheit . . . because it serves to increase heat stress by blowing air that is warmer than body temperature over the skin surface." He also indicated that the CDC does not recommend the use of fans when the temperature is above 95 degrees Fahrenheit, which frequently occurs in the Pack Unit. Dr. Vassallo likewise testified that "[f]ans are not protective at temperature[s] [of] 90 degrees with the humidity of 35 percent or more."

As to air-conditioned "respite areas," Plaintiffs also put forward evidence calling into question the effectiveness of TDCJ's air-conditioned "respite areas." For example, Dr. Vassallo testified that these respite areas are not "an adequate plan to deal with the heat risk" precisely because they are only temporary and so "the time [the inmates] are not in air-conditioning, they are subjected to the temperatures at the Pack Unit which are risky and cause harm, including sickness, morbidity and mortality." Moreover, Dr. Vassallo

noted that the harmful effects of excessive heat can begin to occur *before* an individual might feel the need to go to an air-conditioned space: "Q. Is it possible for someone to start having cognitive problems from heat illness before they realize they need to go to air-conditioning? A. Of course." Thus, according to Dr. Vassallo, because Pack Unit inmates must take the initiative to go to an air-conditioned respite area, they may not know they are in imminent danger until it is too late, and, especially at night, prison officials are unlikely to notice either. Finally, Plaintiffs offered affidavits from inmates in the Pack Unit indicating that access to air-conditioned "respite areas" is not "on demand," and such rooms are often not available. The district court found these affidavits credible on this point—a determination to which we owe significant deference. *See In re Omega Protein*, 548 F.3d at 367 ("Findings based on the credibility of witnesses demand even greater deference."). As Dr. McGeehin observed, while respite areas might theoretically be an effective measure, their effectiveness depends on being available to inmates upon request.[5]

Both of Plaintiffs' experts indicated that the conditions in the Pack Unit, including the heat-mitigation measures, posed a substantial risk of harm to the inmates. In her expert report, Dr. Vassallo stated that "[t]he current measures used to mitigate these serious risks . . . are inadequate to sufficiently reduce the serious risk of harm to the inmates." Upon reviewing TDCJ's most up-to-date mitigation policy, Dr. McGeehin indicated that "it has some improvements in it, but it still has major areas of concern." When asked whether "there [are] any really effective way[s], other than air-conditioning, to mitigate the risk of heat at the Pack Unit," Dr. Vassallo said, "No."

---

[5] Notably, the district court could not determine whether an official policy regarding respite areas exists because "the only policy or practice of allowing inmates to access respite areas is . . . stated in an email, and cannot be found in a separate policy."

Defendants put forward the testimony of Dr. Means and Dr. Reiger, who testified regarding the various factors relevant to an individual's heat risk and concluded that the heat-mitigation measures at the Pack Unit were effective to reduce the risk of serious harm. Dr. Means is a former employee of TDCJ—a defendant in this case—and is herself a defendant in related wrongful death actions. The district court found that Dr. Means "was unable to directly answer most of the questions by Plaintiffs' counsel," was "nonresponsive to questions posed by [the district court]," and "appeared incapable of admitting to anything she did not view as helpful to her side's case." Consequently, the district court "found her to be biased and, frankly, unbelievable," and therefore "[did not] credit any part of her testimony." Notably, Defendants do not contest this finding.

While Dr. Reiger testified that the heat-mitigation measures in the Pack Unit rendered the risk of harm "quite reasonable," this conclusion was countered by the testimony of Dr. Vassallo and Dr. McGeehin, who, as already noted, concluded that the various heat mitigation measures that Defendants employ are of limited value in reducing inmate risk. Moreover, the district court specifically found Dr. Reiger's testimony less credible, given that he consistently misremembered statements made by inmates regarding the availability of respite areas. Such credibility determinations fall squarely within the district court's purview. *See, e.g.*, *Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 529 (5th Cir. 2016) ("[W]e are extremely deferential to a district court's assessment of witness credibility[.]").

Under the clearly erroneous standard of review, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *In re Omega Protein*, 548 F.3d at 367. Upon careful review of the record before us,

we conclude that the district court's "account of the evidence is plausible," *id.*, and we are not "left with the definite and firm conviction that a mistake has been committed." *See Westwego*, 946 F.2d at 1118. Accordingly, the district court did not clearly err in finding that TDCJ's heat-mitigation measures are ineffective to reduce the heat-related risk of serious harm below the constitutional baseline.

This being so, we affirm the district court's conclusion that Plaintiffs have demonstrated the presence of a "question[ ] of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As already noted, Defendants concede that "[c]ommonality required Plaintiffs to prove that TDCJ's existing heat-mitigation efforts necessarily mitigated the risk of high temperature for all class members *or for none of them*." The district court found the latter to be true and, again, that finding is not clearly erroneous.[6]

### *ii. Subclasses*

Defendants also challenge the district court's certification of the two subclasses. As noted, the district court certified a "heat-sensitive" subclass and a "disability" subclass. The heat-sensitive subclass, like the General Class, is asserting an Eighth Amendment claim. Likewise, the disability subclass

---

[6] The district court also concluded that whether "TDCJ officials were deliberately indifferent to the risk posed to the inmates" was a separate common question. The Supreme Court has determined that "for purposes of Rule 23(a)(2) even a single common question will do[.]" *Wal-Mart*, 564 U.S. at 359 (alterations omitted) (quotation marks omitted); *see also* Newberg on Class Actions § 3:20 (5th ed.). This holding is consistent with our prior decision in *Forbush v. J.C. Penny Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (holding that Rule 23(a)'s commonality requirement is satisfied where there is "at least one" common question of law or fact). However, a later decision of ours—*Applewhite v. Reichhold Chemicals, Inc.*, 67 F.3d 571 (5th Cir. 1995)—held that "class certification requires at least *two* issues in common." *Id.* at 573 (emphasis added). Given that we are bound under the rule of orderliness to follow our earlier precedent, and must in any event adhere to Supreme Court precedent, we reaffirm that Rule 23(a)(2) requires only that a plaintiff demonstrate at least one common question of law or fact, notwithstanding *Applewhite*'s contrary holding. Accordingly, we have no cause to assess whether the district court's second asserted common question satisfies Rule 23(a)(2).

asserts an Eighth Amendment claim, but also relies on a claim under the Americans with Disabilities Act and the Rehabilitation Act. And, as noted, the district court determined that both subclasses shared the common questions it identified for the General Class.

Defendants' primary objection to subclass certification is similar to their objection to General Class certification. They argue that the existence of a substantial risk of serious harm cannot be collectively determined because the risk of serious harm from excessive heat varies even among those with conditions rendering them susceptible to heat.

We reject Defendants' challenge to certification of both subclasses. The district court found that TDCJ's heat mitigation measures are not effective to bring the risk of serious harm below the constitutional baseline for *any* Pack Unit inmate—which includes the inmates within the subclasses who have some condition making them particularly susceptible to heat. In addition, the district court concluded that the disability subclass had the "additional common contention . . . that TDCJ officials failed to provide reasonable accommodations to inmates suffering from disabilities that may impact . . . their ability to withstand extreme heat." We find no error.

## B.

### 1.

In addition to meeting the requirements of Rule 23(a), a plaintiff must also demonstrate that a proposed class satisfies one of the criteria articulated in Fed. R. Civ. P. 23(b). Here, the district court certified the classes under Rule 23(b)(2), which permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2).

No. 16-20505

It is well-established that "[i]nstead of requiring common issues, [Rule] 23(b)(2) requires common behavior by the defendant toward the class." *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012); *see also Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) (same). Thus, we have held that Rule 23(b)(2) certification is available if three requirements are satisfied: (1) "class members must have been harmed in essentially the same way"; (2) "injunctive relief must predominate over monetary damage claims"; and (3) "the injunctive relief sought must be specific." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007); *see also Perry*, 675 F.3d at 845. The specificity element requires plaintiffs to "give content" to the injunctive relief they seek "so that 'final injunctive relief may be crafted to describe in reasonable detail the acts required.'" *Perry*, 675 F.3d at 848 (quoting *Shook v. Bd. of Cty. Comm'rs of Cty. of El Paso*, 543 F.3d 597, 605–06 (10th Cir. 2008)).

The Supreme Court has further expounded on Rule 23(b)(2):

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant.

*Wal-Mart*, 564 U.S. at 360 (quotation marks omitted) (citation omitted).

### 2.

In their second amended complaint, Plaintiffs request the following injunctive relief for the General Class and both subclasses:

> Plaintiffs ask that the Court enjoin Defendants to maintain a safe indoor apparent temperature (e.g., maintaining a heat index of 88 degrees or lower) inside each of the Pack Unit's housing areas (calculated using the NWS heat index table), or enter other

injunctive relief sufficient to protect the health and safety of the prisoners at the Pack Unit.

The district court concluded that the General Class and both subclasses "easily" met the standard for Rule 23(b)(2) because: (1) "the conditions of confinement [*i.e.*, non-air-conditioned housing areas] apply uniformly to the class of inmates as a whole"; and (2) "[o]ther mitigation measures, such as providing ice water and fans, and the availability of respite areas, are similarly applied uniformly to all the inmates." For this reason, the district court concluded that "[i]njunctive or declaratory relief . . . would be appropriate respecting the class as a whole if an Eighth Amendment violation were to be found," whether "air-conditioning is indeed needed to cure the violation, or if less drastic measures (such as ordering TDCJ to create and adhere to a more definitive policy regarding respite areas) are shown to suffice . . . ."

Defendants argue that certifying the classes under Rule 23(b)(2) was not appropriate. In essence, Defendants contend that the district court's order does not "identify *specific injunctive relief* that could apply to the entire class or subclasses" or "explain how [that] single form of injunctive relief—whether it be air conditioning or something less—would necessarily be appropriate (or not) for the entire class." According to Defendants, the district court improperly "assumed" that a single form of injunctive relief "would necessarily be required for all class members or none of them."

The district court did not abuse its discretion. By its terms, Rule 23(b)(2) looks to whether the *defendant's* conduct applies "generally to the class." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) does not require "common issues," but rather "requires common behavior by the defendant towards the class," *In re Rodriguez*, 695 F.3d at 365, such that "class members . . . have been harmed in essentially the same way." *Perry*, 675 F.3d at 845. Here, there is no serious question that Defendants have engaged in common behavior that "appl[ies]

generally to the class[es]." Fed. R. Civ. P. 23(b)(2). All inmates, regardless of age or health, are subject to the *same* policy on climate control (*i.e.*, their housing units are not air-conditioned), all have the *same* heat-mitigation measures available to them (whether or not those measures are effective), and all are (allegedly) harmed in essentially the *same* way—*i.e.*, by exposure to a substantial risk of serious harm because of exposure to excessive heat. Thus, the same action/inaction by Defendants is the source of any injury for the entire General Class and the subclasses.

Defendants lean heavily on Rule 23(b)(2)'s requirement that "the injunctive relief sought . . . be specific," *Perry*, 675 F.3d at 845, and that there be "content" given "so that 'final injunctive relief may be crafted to describe in reasonable detail the acts required.'" *Id.* at 848 (quoting *Shook*, 543 F.3d at 605–06). Few of our cases expound on the "specificity" requirement. In one—*Maldonado v. Ochsner Clinic Foundation*—we held that Rule 23(b)(2) certification was inappropriate where the plaintiffs sought to compel the defendants to provide "mutually affordable healthcare." 493 F.3d at 524–25. There, we faulted the plaintiffs for not "identify[ing] any way to determine what a reasonable or 'mutually affordable' rate is for the wide variety of medical services offered by [the defendant]." *Id.* at 524.

We find this requirement satisfied here. While Plaintiffs requested that the district court "enjoin Defendants to maintain a safe indoor apparent temperature" (which admittedly offers little content), they *also* identified specific relief in "reasonable detail" that would fit this standard: "maintaining a heat index of 88 degrees or lower." The district court—of course aware of Plaintiffs' requested relief—identified air-conditioning as a remedy that "would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. While the district court did not specify the precise temperature (as the complaint does), Rule 23(b)(2) does not require that every jot and tittle of

injunctive relief be spelled out at the class certification stage; it requires only "reasonable detail" as to the "acts required." *Perry*, 675 F.3d at 848.  For this reason, this case is quite unlike *Maldonado*, where the requested injunctive relief (the provision of "mutually affordable health care") lacked any meaningful content and provided no guidance.[7]

Defendants contend that the district court "fail[ed] to explain how a single form of injunctive relief . . . would necessarily be appropriate (or not) for the entire class." It seems that Defendants take issue with the district court's failure to explain how air-conditioning as a possible remedy could provide class-wide relief from injuries caused by excessive heat. The answer, of course, is self-evident, and the district court did not abuse its discretion in declining to state the obvious. And, in any event, the district court heard expert testimony on this issue.

## C.

Defendants also argue that the district court's Rule 23(b)(2) certification was prohibited by the Prison Litigation Reform Act (PLRA). The relevant provision of the PLRA provides:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(a)(1)(A).

---

[7] The Plaintiffs are not seeking damages in this case, so there is no issue as to whether "injunctive relief . . . predominate[s] over monetary damage claims[.]" *Maldonado*, 493 F.3d at 524.

No. 16-20505

The district court reasoned that the PLRA "does not prohibit[ ] class-wide relief in this case" because it only "prohibits relief that is unnecessary to correct the alleged Eighth Amendment violation." So, while the district court recognized that the PLRA's restrictions on injunctive relief would *later* come into play, it concluded that they were irrelevant to class certification.

Defendants argue that a district court is required to take Section 3626(a)(1)(A) into account when undergoing its Rule 23(b)(2) analysis. The rationale for this position is straightforward: Rule 23(b)(2) requires district courts to determine whether a single injunction (or declaratory relief) could remedy violations as to all class members; but, the PLRA limits the scope of permissible prospective relief to that which is "necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs," *id.* § 3626(a)(1)(A); so, to be at all meaningful, a district court's Rule 23(b)(2) analysis should only take account of injunctive relief that the PLRA would authorize it to award as a remedy. Defendants make this argument while acknowledging that one of our sister circuits has already rejected it. *See Shook v. El Paso Cty.*, 386 F.3d 963, 969–71 (10th Cir. 2004).

As is always the case when interpreting legal text, our task is to give effect to the language Congress has enacted, not to read additional meaning into the statute that its terms do not convey. *See, e.g., Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 217 (2010) ("Our charge is to give effect to the law Congress enacted."). It follows that when a statute is silent with respect to a particular subject, we will not construe the statute to nonetheless reach the matter. Indeed, "[t]he principle that a matter not covered is not covered is so obvious that it seems absurd to recite it." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (Thomas/West 2012). This is especially true where the claim is that Congress has implicitly altered one provision of law via another provision; in such cases, Congress "ordinarily

provides a relatively clear indication of its intent [to do so] in the text[.]" *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1520 (2017).

The text of Section 3626(a)(1)(A) plainly says nothing at all about class actions or the requirements for class certification. Nor have Defendants directed us to any other provision of the PLRA—or any other statute for that matter—that would support applying Section 3626(a)(1)(A) at the class certification stage. There is therefore no basis for engrafting Section 3626(a)(1)(A)'s requirements onto Rule 23(b)(2).

In reaching this conclusion, we are mindful that Congress rarely seeks to effect a fundamental change in law through circuitous means. "Congress . . . does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Assocs.*, 531 U.S. 457, 468 (2001). Rule 23(b)(2)—unlike the PLRA—does not require that the injunctive relief underlying the certification decision (or ultimately awarded as a remedy) be the bare minimum necessary to cure the violation as to each inmate. Applying Section 3626(a)(1)(A) at the class certification stage would work a considerable restriction on the availability of class action suits in the prison context. These lawsuits overwhelmingly involve Eighth Amendment claims, which require proof: (1) that the inmate "is incarcerated under conditions posing a substantial risk of serious harm"; and (2) that the defendant prison official was "deliberately indifferent" to that risk. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). As is true in this case, determining whether particular conditions pose a substantial risk of serious harm or whether there was deliberate indifference will often depend on characteristics that vary across a prison population. Imposing Section 3626(a)(1)(A)'s requirements at the class certification stage would pose a substantial barrier to class certification in a significant number of prison condition challenges. Absent some indication in the text of Section

3626(a)(1)(A), we cannot conclude that Congress intended that provision to alter the well-established requirements of class certification *sub silentio.*

Defendants' argument is also in tension with our decision in *Williams v. Edwards*, 87 F.3d 126 (5th Cir. 1996), where we held that the PLRA is not implicated at all until the district court actually sets its hand to fashioning injunctive relief. *Williams* involved a prison case that was certified as a class action prior to the PLRA's enactment. *See id.* at 128 & n.4, 133. The district court had not yet awarded prospective relief, and so we determined that Section 3626(a)(1)(A)—which only applies to prospective relief—"ha[d] yet to be triggered." *Id.* at 133. The same principle applies here. Because the district court has not yet come to the point of awarding injunctive relief, "the provisions of [Section 3626(a)(1)] have yet to be triggered[.]" *Id.*

Relying on our decision in *Ball v. LeBlanc*, Defendants argue that the PLRA categorically prohibits an injunction requiring that the Pack Unit be air-conditioned. This is not so. In *Ball*—which was not a class action case—we held that a permanent injunction requiring that a prison facility be air-conditioned was overbroad under the PLRA because the evidence produced at trial showed that "there [were] many acceptable remedies short of facility-wide air conditioning" that could possibly cure the Eighth Amendment violation. 792 F.3d at 598–99. In other words, *Ball* held that air-conditioning was not appropriate in that case because other acceptable and less-intrusive remedies had yet to be tried—not that air-conditioning was necessarily an impermissible remedy. *Id.* at 599. We also held that a facility-wide injunction was not appropriate under the PLRA because only the three named plaintiffs were at issue. *Id.* at 599–600.

Neither of these holdings precludes class certification here. Just as in *Ball*, if Plaintiffs obtain a favorable judgment at trial and it appears that air-conditioning the Pack Unit "extend[s] . . . further than necessary to correct the

violation," 18 U.S.C. § 3626(a)(1)(A), the district court would be required to tailor any injunctive relief to adhere to the PLRA. As the district court noted, "[i]f an Eighth Amendment violation is found, this Court will need to determine whether air-conditioning the housing areas is indeed the least intrusive means of correcting the violation, or whether augmenting the mitigation measures that are already in place at the Wallace Pack Unit would be sufficient to remedy the violation." Nothing in *Ball*, however, requires the district court to make this determination at the point of certifying a class, and we do not pass judgment on the issue either.[8]

We hold that Section 3626(a)(1)(A) does not alter the requirements for certifying a class action under Rule 23(b)(2).

## IV.

Accordingly, because we conclude that the district court did not abuse its discretion in certifying the General Class or the subclasses, we AFFIRM.

---

[8] The Defendants also cite to *Gates v. Cook*. In *Gates*, which was a class action case, the district court entered an injunction requiring, *inter alia*, that the defendant "provide fans, ice water, and daily showers when the heat index is 90 degrees or above . . . ." 376 F.3d at 339; *see generally id.* at 339–40. Of course, just because *Gates* affirmed a different injunction on a different record does not speak to whether the Plaintiffs' requested relief in this case would be permissible under the PLRA.