# United States Court of Appeals
# for the Fifth Circuit

_____

No. 24-50605

_____

United States Court of Appeals
Fifth Circuit

**FILED**
August 22, 2025

Lyle W. Cayce
Clerk

Raymond E. Lumsden,

*Plaintiff—Appellant*,

*versus*

Bryan Collier, *Director TDCJ Institutions division*; Hazelwood, *Deputy Director of Religious Programming Division*; A. Martinez, *Warden*; Henry, *Major - Food Service Manager*; Bruce Armstrong, *Senior Warden*; Shumaker, *Captain - Supervising Manager of Laundry*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:23-CV-491

_____

Before King, Smith, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Plaintiff Raymond E. Lumsden appeals the summary judgment dismissal of claims related to his religious exercise, medical needs, diet, safety, and exposure to heat while confined in Texas state prison. For the reasons that follow, we AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-50605

## I. Factual Background

Lumsden is currently incarcerated at the Texas Department of Criminal Justice ("TDCJ") Hughes Unit in Gatesville, Texas. His claims pertain to three largely distinct aspects of his confinement: (A) the exercise of his religion, (B) his medical care, diet, and general safety, and (C) his exposure to heat. We derive the following facts from Lumsden's verified complaint[1] and the summary judgment evidence.

### A. Religious Exercise

Lumsden is a member of the Hughes Unit's Native American Faith Group and was elected by other members to serve in a leadership role as the group's Speaking Elder. The Native American Faith is one of eleven primary faith preferences recognized by the TDCJ. Relevant to this appeal, Lumsden contends that TDCJ discriminates against his faith and favors Christianity by offering privileges to those who attend a Christian "Field Minister School," denying holiday celebrations to the Native American Faith Group, and restricting his access to sacred items.

The Field Minister School is a non-profit that offers inmates serving long sentences in TDCJ a chance to earn a "Bachelor of Arts in Applied Ministry." Graduates of the program serve as "Field Ministers" to other inmates, a role which comes with certain duties, such as being a "Tier Walker." Tier Walkers are inmates, including Field Ministers and other volunteers, who provide peer-based counseling. The school is open to inmates of all religions, and non-Christian graduates can and have become Field Ministers in the religions they practice. But the school is run by a

---

[1] "On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit." *Lozano v. Collier*, 98 F.4th 614, 625 (5th Cir. 2024) (quoting *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003)).

"Christian-based organization," its application materials reference "the Gospel of Jesus Christ," and its curriculum appears heavily Christian. Because of this, Lumsden contends that attending the school would violate his beliefs.

Lumsden also asserts that the Native American Faith Group is unfairly denied holiday celebrations. TDCJ "maintains an annual calendar of all major Holy Days observed by recognized faith groups." On some Holy Days, "observants are permitted 'lay-ins'—exemptions from work and other responsibilities—allowing them to spend more time engaging in their religious practices," fast days, and communal meals. The holiday calendar lists the Spring and Fall Equinox, and Summer and Winter Solstice as "Native American Shamanism" Holy Days, but does not recognize the days with a lay-in, fast day, or communal meal.

Finally, Lumsden alleges that he is not permitted to wear his sacred medicine bag at all times, even though Muslim and Jewish inmates are allowed "to wear their religious headgear and other religious items." To offset the risk of inmates' smuggling contraband through religious devotional items, TDCJ policy permits inmates to "possess certain approved devotional items associated with their designated faith preference," including a conforming medicine bag for members of the Native American Faith Group.

## B. Medical Needs, Diet, and Safety

Unrelated to the exercise of his faith, Lumsden asserts that TDCJ officials failed to address his medical and diet needs, and generally failed to provide a safe environment. First, Lumsden alleges he was denied a medical "zipper shirt" he was previously provided to eliminate shoulder pain from pulling a shirt over his head. While the shirt was replaced with one that

fastens with ties, Lumsden claims tying the shirt "causes immense pain and swelling" because of arthritis in his hands.

Second, Lumsden asserts prison officials failed to follow his prescribed "Diet for Health." "The Diet for Health is prescribed for patients with Diabetes, Hypertension, Hyperlipidemia or Obesity, and provides 1900-2100 calories per day." Lumsden contends that Defendant-Appellee Major Henry's refusal to adhere to the diet has caused him "uncontrollable heartburn" and weight gain.

Third, Lumsden points to a shortage of staff and a policy implemented by Defendant-Appellee A. Martinez, Unit warden, that allows certain maximum-security inmates to "assist available staff" and move freely around the building. As a result of the staffing shortage and this policy, Lumsden contends that there have been both successful and attempted escapes, as well as rampant contraband, violence, and drug use.

## C. Exposure to Excessive Heat

Lumsden asserts that he is exposed to excessive and life-threatening heat—an average summer heat index above 100 degrees on the Hughes Unit—despite having asthma that makes him particularly sensitive to heat. Lumsden contends that as a result of the staffing shortages, TDCJ's measures for mitigating excessive heat conditions, outlined in TDCJ Administrative Directive 10.64, fail miserably: Cool respite areas are not available, ice runs out within a few minutes of being refilled every 12 hours, showers are rarely cold, and staff is unavailable to field requests from inmates seeking access to these measures. He further alleges that the heat has caused him difficulty breathing, skin rashes, cramps, and dizziness. Finally, Lumsden notes that officials have "threatened" to place him in a "cool bed" to address his complaints about the heat, but states that this would require

moving to a high security unit and losing access to religious services and other liberties.

Gene Miller, the Senior Warden of the Hughes Unit, reports that he has "the responsibility of implementing and enforcing all heat mitigation measures at the Hughes Unit" and personally oversees the implementation of the measures detailed in AD-10.64.[2] According to Miller, safety posters instruct inmates on how to avoid heat illness, and he "will ensure ice water is available to the inmates in accessible coolers 24 hours a day." Miller reports that there are "over sixteen air-conditioned areas within the Hughes Unit that can be used as respite areas" and that inmates are "allowed to utilize and carry cooling towels," and "purchase sports drink powder from the commissary."

## II. Procedural Background

Lumsden filed a pro se suit against the director of TDCJ and five other TDCJ officials, bringing claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and 42 U.S.C. § 1983. Relevant here, Lumsden asserted that officials violated RLUIPA and the Free Exercise, Establishment, and Equal Protection Clauses by burdening the exercise of his faith and favoring Christianity; and violated the Eighth Amendment by failing to provide the medical shirt and diet he required, and exposing him to a dangerous environment and extreme heat. He sought damages and equitable relief.

---

[2] We note that a page appears to be missing from Miller's affidavit in the record on appeal.

No. 24-50605

Lumsden complied with the district court's order to answer questions providing a more definite statement of his claims, and TDCJ[3] filed a motion to dismiss that was converted to a motion for summary judgment. After both parties filed additional motions and evidence in support and opposition of summary judgment, the district court granted TDCJ's motion for summary judgment. Lumsden timely appealed.

## III. Standard of Review

"We review a district court's summary judgment order de novo." *Lozano v. Collier*, 98 F.4th 614, 620 (5th Cir. 2024). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute as to a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "All facts and inferences must be construed 'in the light most favorable to the nonmoving party.'" *Lozano*, 98 F.4th at 620 (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

## IV. Discussion

Construing Lumsden's pro se brief liberally, *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993), we address his arguments that the district court erred in dismissing three sets of claims: (A) burdening the exercise of his faith in violation of RLUIPA, the First and Fourteenth Amendments, (B) failing to provide for his medical and dietary needs and safety in violation of the

---

[3] Lumsden brought claims against the defendants in their official and individual capacities, not the TDCJ. We distinguish between the individual defendants when necessary but often refer to TDCJ for simplicity. *See Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 603 n.4 (5th Cir. 2008).

Eighth Amendment, and (C) exposing him to excessive heat in violation of the Eighth Amendment. Because pro se litigants are still required to brief claims to preserve them, Lumsden has abandoned any other claims. *Yohey*, 985 F.3d at 224–25.

## A. Religious Claims

Lumsden asserts his religious claims under RLUIPA and § 1983 against Defendants-Appellees Bryan Collier, Director of TDCJ, and Hazelwood, Director of Chaplain Services, in their official capacities. He seeks only injunctive and declaratory relief. We begin by addressing Lumsden's religious claims under RLUIPA.

### 1. RLUIPA

"RLUIPA prohibits the imposition of a 'substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability,' unless the burden '(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *Lozano*, 98 F.4th at 621 (alteration in original) (quoting 42 U.S.C. § 2000cc-1(a)). We analyze RLUIPA claims under a burden-shifting framework. *Id.*

The plaintiff has the initial burden to "show that the government has substantially burdened the plaintiff's religious exercise grounded in a sincerely held religious belief." *Id.* "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Holt v. Hobbs*, 574 U.S. 352, 360 (2015) (quoting 42 U.S.C. § 2000cc-5(7)(A)). "In order to show a substantial burden, the plaintiff must show that the challenged action 'truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs.'" *Garner v. Kennedy*, 713 F.3d 237, 241 (5th Cir. 2013) (quoting *Adkins v.*

*Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004)). "The effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs." *Lozano*, 98 F.4th at 621 (citation modified) (quoting *Adkins*, 393 F.3d at 570). If the plaintiff establishes a substantial burden, "the burden shifts to the government to prove that the relevant policy is the least restrictive means of a furthering a compelling government interest." *Id.*

Lumsden argues that TDCJ has substantially burdened the exercise of his Native American faith in three ways: (a) by denying him privileges afforded to graduates of the Field Minister School, (b) by denying him "the ability to observe the Native American Equinox[] and Solstice," and (c) by prohibiting from wearing his sacred medicine bag at all times. We address each in turn.

#### a. Field Minister School

Lumsden argues that being forced to choose between attending the Field Minister School in violation of his beliefs, or forgoing the privileges afforded Field Minsters, substantially burdens the exercise of his Native American faith. Many of the privileges Lumsden points to on appeal, such as "[f]ull access to the [u]nit," computer access, a lanyard, and a badge are not the type of "generally available, non-trivial benefit[s]" that can support a substantial burden to religious exercise. *See Adkins*, 393 F.3d at 570; *see also DeMoss v. Crain*, 636 F.3d 145, 153 (5th Cir. 2011) (finding no substantial burden where inmate was forced to "choose between using the dayroom during certain hours and praying"). But Lumsden also points to the role that Field Ministers serve in counseling and spiritually advising other inmates,

and stresses that his faith "demand[s] that he be of service to his community."

To the extent Lumsden argues that there are restrictions on his ability to serve as a spiritual advisor, he fails to sufficiently define those restrictions and explain how, standing alone, they constitute a substantial burden on his religious exercise. Instead, he argues that "he requires equal access, privileges, and religious accommodations as the Christian Field Minister[]s receive." We agree with the district court that Lumsden's argument here "appears to be that the field minister program is an improper favoring of Christianity and a discriminatory religious practice," and is better addressed under the Establishment Clause.

### b. Holy Days

Next, Lumsden argues that TDCJ has substantially burdened his religious exercise by denying him the ability to observe the annual Equinoxes and Solstices—sacred days in his faith. The summary judgment evidence supports that the TDCJ does not recognize the Equinoxes and Solstices with a lay-in or meal for the Native American Faith Group, and that at least one other faith gets a lay-in and meal on the same days.

The Hughes Unit Chaplain, John M. Oliphant, explained that TDCJ's calendar reflects that there are "no fixed designated 'Holy Days' or a standard calendar" within the Native American faith community and celebrations "differ from tribe to tribe and season to season." However, inmates may "also request a lay-in for observance of a Holy Day not found on the annual calendar" by following TDCJ's process for requesting additional religious accommodations. TDCJ argues, and Oliphant's affidavit supports, that Lumsden has not requested additional accommodations to observe Holy Days consistent with his faith. While Lumsden disputes this,

No. 24-50605

he does not point to evidence to show otherwise.[4] In the absence of this evidence, Lumsden cannot show a TDCJ policy that substantially burdens his religious exercise, and the district court did not err in granting summary judgment in favor of TDCJ.

### c. Medicine Bag

Lastly, Lumsden argues that TDCJ has substantially burdened his religious exercise by prohibiting him from wearing his sacred medicine bag at all times, despite allowing Field Ministers to wear larger badges. We recognize that policies restricting access to medicine bags may constitute a substantial burden on religious exercise, and that those policies may also be the least restrictive means of furthering a compelling interest. *See Davis v. Davis*, 826 F.3d 258, 266 (5th Cir. 2016); *Odneal v. Pierce*, 324 F. App'x 297, 301–02 (5th Cir. 2009); *Cox v. Stephens*, No. 2:13-CV-151, 2015 WL 1417033, at *8, 10–11 (S.D. Tex. Mar. 27, 2015). But Lumsden did not sufficiently identify a policy that substantially burdens his religious exercise here. Below, Lumsden offered little more than the allegation that he was prevented from wearing his medicine bag at all times. The district court did not err in granting summary judgment in favor of TDCJ on this record.

In sum, we affirm the summary judgment to TDCJ on Lumsden's RLUIPA claims.

---

[4] Lumsden *did* submit evidence showing he requested an accommodation to observe the Solar Eclipse, but he challenges only the denial of accommodations for the annual Equinoxes and Solstices. And while Lumsden produced an affidavit explaining that "the Unit has always denied our Native American Solstice/Equinox Holiday Meals and ceremonies," that alone does not demonstrate that he ever requested accommodations for those days.

No. 24-50605

## 2. Free Exercise and Equal Protection Clause

To the extent Lumsden argues that the district court erred in dismissing his Free Exercise claims based on the same factual predicates, we find the district court correctly concluded that Lumsden has "reasonable opportunities to exercise his faith" and "the restrictions on his religious exercise are reasonably related to legitimate state interests." *See Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 607 (5th Cir. 2008). Likewise, Lumsden failed to show that the challenged policies are "the product of purposeful discrimination," as required to succeed on an Equal Protection claim. *See Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 862–63 (5th Cir. 2004). Therefore, the district court did not err in dismissing these claims.

## 3. Establishment Clause

Lastly, Lumsden argues that the district court erred in dismissing his claim under the First Amendment's Establishment Clause. Lumsden asserts that TDCJ violates the Establishment Clause by supporting the Field Minister School's operation in the prison and providing special privileges to its graduates—privileges that Lumsden cannot receive because attending the Christian-based school would violate his beliefs.[5]

"The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). We find that Lumsden falls short of demonstrating a genuine dispute of material fact as to whether TDCJ favored one denomination over another through the Field Minister School.

---

[5] Below, Lumsden's Establishment Clause claims included more general allegations of Christian indoctrination and unequal religious programming for Native Americans. He has not sufficiently briefed, and thus forfeits, these arguments on appeal. *Yohey*, 985 F.3d at 224–25.

No. 24-50605

In doing so, we credit Lumsden's evidence that the school itself promotes Christianity, and do not doubt that attending the school would violate Lumsden's beliefs.[6]

However, Lumsden concedes that he is not forced to attend Field Minister School. And the evidence supports that the school does not receive any government funding, that non-Christians can and have attended the school, that there are other routes to becoming a Field Minister, and that at least some of the same privileges, as well as other ways of serving as a spiritual leader, are available to non-Field Ministers. Lumsden himself, for instance, holds a leadership role within his faith group. To the extent Lumsden provides evidence of benefits TDCJ provides to Field Ministers, he focuses on the privileges enjoyed by Tier Walkers. But Lumsden's evidence indicates that this peer-based counseling program is not exclusive to Field Ministers. Accordingly, TDCJ is entitled to summary judgment on Lumsden's Establishment Clause claim.

### B. Eighth Amendment Claims: Medical Needs, Diet, and Safety

Unrelated to his religious claims, Lumsden argues the district court erred in dismissing his claims that officials violated the Eighth Amendment by acting with deliberate indifference to his (1) medical needs, (2) diet, and

---

[6] Nor do we endorse the district court's application of the "reasonableness" standard set forth in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987), and applied to an inmate's Establishment Clause claim in a non-binding portion of *Brown v. Collier*, 929 F.3d 218, 244 (5th Cir. 2019). *See Lozano*, 98 F.4th at 627–28, 627 nn.8–9 (remanding inmate's Establishment Clause claim where "district court relied largely on *Brown*" and had not applied the Supreme Court's subsequent holding in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022)); *Kennedy*, 597 U.S. at 510 (explaining "the Establishment Clause must be interpreted by 'reference to historical practices and understandings'" (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014))).

(3) general safety.[7] Lumsden appears to make these claims against Defendant-Appellees Martinez, Henry, Bruce Armstrong (Senior Warden), and Captain Shumaker (Supervising Manager of Laundry) in their official and individual capacities, seeking both injunctive relief and compensatory damages. Because we find Lumsden failed to show an Eighth Amendment violation, we do not further address the individual defendants' defense of qualified immunity. *See Gobert v. Caldwell*, 463 F.3d 339, 352 n.44 (5th Cir. 2006).

The Eighth Amendment's prohibition on cruel and unusual punishment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care," and to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). To establish an Eighth Amendment violation, Lumsden must show that he was exposed to "a substantial risk of serious harm," and "that prison officials acted or failed to act with deliberate indifference to that risk." *Gobert*, 463 F.3d at 345–46. "A prison official displays deliberate indifference only if he (1) 'knows that inmates face a substantial risk of serious bodily harm' and (2) 'disregards that risk by failing to take reasonable measures to abate it.'" *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (quoting *Gobert*, 463 F.3d at 346). Lumsden's claims fall short of this "extremely high standard." *See Arenas*, 922 F.3d at 620 (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)).

First, Lumsden argues that prison officials were deliberately indifferent to his need for a medical "zipper shirt." "A prison official violates

---

[7] Lumsden also asserted a claim based on the denial of a medical mattress below. He has not briefed, and thus forfeited, this claim. *Yohey*, 985 F.3d at 224–25.

the Eighth Amendment when he shows deliberate indifference to a prisoner's serious medical needs, which equates to the 'unnecessary and wanton infliction of pain.'" *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "We have defined 'a serious medical need' as 'one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required.'" *Id.* (quoting *Gobert*, 463 F.3d at 345 n.12). While Lumsden contends arthritis in his hands makes tying the shirt painful, the medical records, including an X-ray of Lumsden's hands, show officials disagree that an alternative shirt is needed. This is the type of "disagreement about the recommended medical treatment" that cannot support a claim for deliberate indifference. *See Carlucci*, 884 F.3d at 538.

Second, Lumsden argues that officials were deliberately indifferent to his need to receive his prescribed "Diet for Health." "Prison officials have a constitutional obligation to provide reasonably adequate food. . . ." *Eason v. Thaler*, 14 F.3d 8, 10 (5th Cir. 1994). But Lumsden's evidence that officials did not always comply with his prescribed diet does not support that Lumsden was served a constitutionally inadequate diet in its place. Lumsden's arguments to the contrary lack the specificity and supporting evidence required to survive summary judgment. *Cf. Jones v. Tex. Dep't of Crim. Just.*, 880 F.3d 756, 760 (5th Cir. 2018) (remanding denial of preliminary injunction where a diabetic plaintiff "assert[ed] that if the deprivations of his prescribed diet continue[d], he [was] liable to suffer additional strokes, heart attacks, and other life-threatening diabetic complications").

Third, Lumsden asserts that officials have been deliberately indifferent to a critical staff shortage, resulting in rampant drug use, overdoses, and violence in the prison. Lumsden further argues that the prison's solution to the staff shortage—giving Tier Walkers badges and

No. 24-50605

responsibilities—violates Texas state law and this court's precedent prohibiting inmates from acting in a supervisory capacity over other inmates. (citing *Ruiz v. Estelle*, 650 F.2d 555 (5th Cir. 1981); Tex. Gov't Code Ann. § 500.001). Lumsden barely addresses how these conditions expose him to a substantial risk of harm. Instead, he focuses on the injustice of Tier Walkers getting privileges he does not, and the danger posed to others by inmates escaping. He therefore fails to show an Eighth Amendment violation.

The district court did not err in dismissing Lumsden's claims that officials violated the Eighth Amendment by being deliberately indifferent to his medical needs, diet, or safety.

## C. Exposure to Excessive Heat Claim

Finally, Lumsden argues the district court erred in dismissing his Eighth Amendment claim based on exposure to excessive heat. He argues that TDCJ's heat mitigation policies are not being followed, that his asthma makes him particularly vulnerable to heat, and that only Tier Walkers are housed in areas with ice and air conditioning. Lumsden asserts this claim against Collier in his official capacity, seeking injunctive relief.

"[W]e have repeatedly recognized the serious risk of harm that excessive heat can pose in the prison context absent adequate mitigating measures, and we have consistently found evidence sufficient in these cases to support an Eighth Amendment violation, even when certain mitigating measures were available." *Yates v. Collier*, 868 F.3d 354, 361 (5th Cir. 2017); *see, e.g.*, *Ball v. LeBlanc*, 792 F.3d 584, 596 (5th Cir. 2015) (affirming "district court's conclusion that housing these prisoners in very hot cells without sufficient access to heat-relief measures, while knowing that each suffers from conditions that render him extremely vulnerable to serious heat-related injury, violates the Eighth Amendment"); *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) (explaining our "circuit has made very clear that

15

inmates have a right, under the Eighth Amendment, not to be subjected to extreme temperatures without adequate remedial measures"); *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) (upholding permanent class-wide injunction requiring Mississippi to "provide fans, ice water, and daily showers when the heat index is 90 degrees or above").

Lumsden presents evidence challenging whether sufficient mitigating measures—access to respite areas, ice, and cool showers—are in place at the Hughes Unit. But he also claims that officials have offered him the very remedy seeks—an air-conditioned cell. Though Lumsden alleges that this solution would mean losing access to some prison services, he does not explain how it is constitutionally inadequate. On this record, the district court did not err in dismissing Lumsden's Eighth Amendment claim based on exposure to excessive heat.

## VI. Conclusion

Finding no reversible error, we AFFIRM the judgment of the district court.