# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 25, 2025

Lyle W. Cayce
Clerk

———————

No. 24-10777

———————

Cynthia Coones, *Individually, and as Surviving Parent and Representative of* the Estate of Jace Coones, *Deceased*,

> *Plaintiff—Appellant*,

*versus*

Beverly Cogburn, *Registered Nurse*; Christi Baker, *Licensed Vocational Nurse*; Edmundo Cueto, *Warden*; Jodi Hefner; Regional Director of TDCJ Region V, In August 2020; Bryan Collier; Mitchell County Hospital District; Texas Tech University; Mitchell County, Texas; Security Supervisor; John Does, *Guards and Medical Staff*; Christine M. Heady, *Registered Nurse*; Jennifer A. Aguilar, *Licensed Vocational Nurse*; Olivia Herrera, *Registered Nurse*; Susan Boedeker, *Licensed Vocational Nurse*; Brad R. Baker, *Medical Doctor*; Chad R. Morris; State of Texas; Texas Department of Criminal Justice; FNU LNU, *Security Supervisor on duty at 16:51 on 8/28/2022*,

> *Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:22-CV-90

———————————————————————

Before Stewart, Dennis, and Haynes, *Circuit Judges*.

No. 24-10777

PER CURIAM:[*]

The subject of this appeal has long been familiar in the Fifth Circuit—the deadly impact of the Texas heat on inmates. Jace Coones died in a Texas prison due to excessive heat exposure. The district court dismissed the suit for failure to state a claim. As the Fifth Circuit has repeatedly acknowledged, inmates have a right to be free from excessive heat. Accordingly, we REVERSE in part, AFFIRM in part, and REMAND.

## I.     Background[1]

Summers are fatal for many Texas inmates. Statewide, there have been as many as 271 heat deaths in Texas prisons between 2001 and 2019—30 times the national average. As summers continue to get hotter, the problem continues to get worse. However, many Texas prisoners continue to suffer the extreme heat without remedial measures such as air conditioning or fans.

Coones was a prisoner in the custody of the Texas Department of Criminal Justice ("TDCJ") in Colorado City. He suffered from allergies and asthma, both of which make it difficult to breathe, rendering him especially susceptible to the stresses of extreme heat.

Like many cells in Texas, Coones's cell did not have air conditioning. In the summer, many parts of his unit reached temperatures in the 90s and 100s throughout the day. The unit did not use fans, ice water, or daily showers to combat the heat.

The events in question took place in August 2020. Coones sought medical care throughout the month. Coones visited Mitchell County

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

[1] This appeal comes to us on a motion to dismiss, so we accept all well-pleaded factual allegations as true and resolve all reasonable inferences in Plaintiff's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Hospital twice in early August, including a two-night stay for dehydration from excessive heat.

On August 28, 2020, the temperature in Colorado City was over 100 degrees for more than seven hours, reaching a high of 106 degrees. Coones's cell was as hot or hotter than outside. That afternoon, Coones visited the medical unit. He complained to Registered Nurse Beverly Cogburn that his cell was too hot, he needed to cool off, and he wanted a shower.

Cogburn took his pulse and respiration rate. Coones's resting pulse was 103, and his respiration rate was 98 breaths per minute—much higher than his typical pulse of 80 and respiration rate of 18. Cogburn noted that Coones's skin was warm and dry; a typical response to the heat would be to sweat, which helps cool the body, but Coones's dry skin suggested he was significantly dehydrated. Cogburn allowed Coones to rest on a gurney for an unspecified amount of time. At some point, Cogburn told Coones to leave, but he refused because he feared returning to his overheated cell given how it had hurt him. Cogburn did not allow him to stay despite the medical issues he was having and instead called security to return Coones to his cell.

On the morning of August 30, after another 100+-degree day, Licensed Vocational Nurse Christi Baker saw Coones in his cell, "rolling around on the floor naked" and unable to verbalize. She noted that Coones was surrounded by four untouched trays of food. Baker did not provide any medical treatment and merely "encouraged [Coones] to get up and get on with his day."[2]

---

[2] The entirety of Baker's medical note is as follows:

> Offender is in his cell rolling around on the floor naked. Offender is not verbalizing pain and no respiratory distress is noted. Offender does not verbalize to nursing or security but does respond to verbal stimuli. The offender has been offered food from meal service and there are 4 full trays in the cell on the floor that has not been touched. This nurse encouraged the offender to get up and get on with his day without response to

No. 24-10777

Coones was found dead in his cell the next morning. Rigor mortis with mottling had set in, meaning that Coones had been dead for a significant period. Coones had no food in his stomach, meaning he had not recently eaten. His body weighed 24 pounds less than three days prior.

Plaintiff Cynthia Coones is the mother of Jace Coones. She asserts Eighth Amendment, Americans with Disabilities Act ("ADA"), and medical malpractice claims against three categories of defendants:

(1) Supervisory Defendants: Executive Director of TDCJ Bryan Collier and Warden Jody Hefner.

(2) Care-Providing Defendants: RN Beverly Cogburn and LVN Christi Baker, among other care providers.[3]

(3) Entity Defendants: Mitchell County, Texas Tech University, Mitchell County Hospital District, TDCJ, and Texas.

The district court dismissed the lawsuit for failure to state a claim. Plaintiff appeals.

## II.    Standard of Review

We review a district court's grant of a motion to dismiss de novo. *Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 630 (5th Cir. 2014). At this early stage, a complaint survives a motion to dismiss for failure to state a claim when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

---

suggestions. Security was advised to let medical know if the offenders condition worsens or changes in any way. (Capitalization removed.)

[3] The remaining Care-Providing Defendants include Christine M Heady, RN, Olivia Herrera, RN; Jennifer A. Aguilar, LVN; Susan Boedeker, LVN; Brad R. Baker, MD; and Chad R. Morris.

4

## III.    Discussion

### A. Eighth Amendment Claim

Plaintiff asserts an Eighth Amendment claim against all Defendants. The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII.  To state an Eighth Amendment violation, Plaintiff must plausibly allege (1) a sufficiently serious deprivation of rights (2) carried out with "deliberate indifference to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citation omitted).

Defendants assert that qualified immunity shields them from liability. However, Defendants are not entitled to qualified immunity if the alleged actions violated a right that was "clearly established" at the time of the violation. *Baker v. Coburn*, 68 F.4th 240, 245 (5th Cir. 2023) (quoting *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001)).

We conclude that Plaintiff plausibly states a violation of clearly established Eighth Amendment law against Executive Director of TDCJ Bryan Collier, Warden Jodi Hefner, RN Beverly Cogburn, and LVN Christi Baker.  Plaintiff's claims against the remaining Defendants fail.

### 1. *Supervisory Defendants*

Plaintiff alleges that Collier and Hefner violated the Eighth Amendment by failing to maintain humane conditions.  "[T]he Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 832).  Prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measure to ensure the safety of the inmates." *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004).

The first element of an Eighth Amendment claim—requiring a sufficiently grave deprivation—is satisfied.  "It is well-established in our

circuit that the Eighth Amendment guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures." *Yates v. Collier*, 868 F.3d 354, 360 (5th Cir. 2017) (internal quotation marks and citation omitted); *see Gates*, 376 F.3d at 339–40 (affirming injunction directing prison to provide fans, ice water, and daily showers when the heat index is 90 degrees or above); *Smith v. Sullivan*, 553 F.2d 373, 381 (5th Cir. 1977) ("If the proof shows the occurrence of extremes of temperature that are likely to be injurious to inmates' health[,] relief should be granted . . . .").

The second element is also satisfied—Defendants disregarded a known substantial risk of serious harm "by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. We can infer that Defendants knew of the risk, given its open and obvious nature—the brutality of the Texas heat is well known, and Defendants would have been reminded of it every time they stepped outside. *See Hinojosa v. Livingston*, 807 F.3d 657, 667 (5th Cir. 2015) ("[T]he open and obvious nature of the dangerously hot conditions would also support an inference of deliberate indifference.").

Although the open and obvious nature of the extreme heat is enough to infer knowledge, this case presents more. There have been as many as 271 heat deaths in Texas prisons between 2001 and 2019. Supervisor Defendants are also likely aware of the many lawsuits regarding the extreme heat in Texas prisons. *See Yates*, 868 F.3d at 360 ("TDCJ officials are, or have been, defendants in numerous other cases alleging Eighth Amendment violations based on excessive heat in prison."); *Webb v. Livingston*, 618 F. App'x 201, 204 (5th Cir. 2015) (per curiam) (considering case involving the "heat-related deaths of five prisoners who died while housed in facilities operated by [TDCJ]"); *Valigura v. Mendoza*, 265 F. App'x 232, 233–34 (5th Cir. 2008) (per curiam) (deciding appeal involving prisoner who alleged that "temperatures in the bunk area reached into the nineties and hundreds due to poor ventilation"). Indeed, Collier and another TDCJ official testified in previous litigation that summer temperatures in prisons are so high that

inmates are at serious risk of harm unless adequate measures are taken. Order at 76–77, *Tiede v. Collier*, No. 1:23-CV-1004 (W.D. Tex. Mar. 26, 2025), ECF No. 202. Despite this knowledge, Collier and Hefner did not implement remedial measures for the heat. The second element is thus satisfied at this stage.

We note that the district court dismissed this claim by pointing to TDCJ policy to provide fans, ice water, and daily showers. *See Enhanced Heat Protocols*, TDCJ, https://www.tdcj.texas.gov/offender_info/enhanced_heat_protocols.html [https://perma.cc/64F5-5QS7]. But the mere presence of remedial measures is not a sufficient defense—remedial measures must adequately ensure prisoners do not experience excessive heat in violation of the Eighth Amendment. *See Yates*, 868 F.3d at 360; *Blackmon v. Garza*, 484 F. App'x 866, 871 (5th Cir. 2012) (per curiam) (holding that despite remedial efforts by prison officials, inmates were still denied access to adequate cooling measures). Regardless, neither the district court nor Defendants indicate when TDCJ adopted the policy. If the policy did not exist in August 2020, the policy is irrelevant to Coones's case. The district court's dismissal of Plaintiff's claim at this stage, without further discovery, was premature.

Further, Collier and Hefner are not entitled to qualified immunity. We have repeatedly recognized that supervisory defendants' failure to provide adequate measures to remediate the Texas heat violates the Eighth Amendment. *E.g.*, *Yates*, 868 F.3d at 361. What's more, in later stages of litigation, "we have consistently found evidence sufficient in these cases to support an Eighth Amendment violation, even when certain mitigating measures were available." *Id.* Accordingly, we reverse the district court's dismissal of the Eighth Amendment claim against Collier and Hefner.

### 2. *Care-Providing Defendants*

Plaintiff next alleges that Care-Providing Defendants violated Coones's Eighth Amendment rights. "A prison official violates the Eighth

Amendment when he shows deliberate indifference to a prisoner's serious medical needs, which equates to the 'unnecessary and wanton infliction of pain.'" *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). "To prevail on a claim for deliberate indifference, the plaintiff must show that a federal actor denied him treatment, ignored his complaints, knowingly treated him incorrectly, or otherwise evidenced a wanton disregard for his serious medical needs." *Carlucci*, 884 F.3d at 538.

We conclude that Plaintiff has plausibly alleged that Cogburn and Baker committed a clearly established Eighth Amendment violation. However, Plaintiff has not stated a plausible claim as to the remaining Care-Providing Defendants.

### a. Beverly Cogburn

Plaintiff alleges that Cogburn was aware of the hot conditions and that Coones did not have air conditioning. She also knew that Coones was not sweating, he was taking 98 breaths per minute, and his pulse was 103—all of which are signs of severe dehydration. Cogburn allowed Coones to rest on a gurney, although we do not know how long he was allowed to rest. Cogburn then called security to escort him back to his overheated cell despite Coones's obvious need (at least based on the facts alleged in the complaint at this stage) for medical care.[4] Coones died less than three days later.

At this early stage of litigation, these facts state a plausible Eighth Amendment claim. Plaintiff plausibly alleges that Cogburn was aware of the

---

[4] At this stage, based on the facts in the pleadings of how Cogburn acted, it is arguable that her forcing him out despite his deep need to remain was much more than negligent and knowingly and wantonly placed his life at risk.

excessive risks to Coones's health and safety—Cogburn knew about Coones's medical conditions that made him more susceptible to the heat, that Colorado City was experiencing a hot summer, and that Coones was exhibiting classic signs of significant dehydration from exposure to excessive heat. *Cf. Huffman v. Linthicum*, 265 F. App'x 162, 163 (5th Cir. 2008) (per curiam) (plaintiff alleging failure to treat tooth pain with dentures pleaded an Eighth Amendment violation). As Plaintiff alleges, a nurse would know those symptoms were signs of severe dehydration (especially when coupled with Coones's repeated complaints about the heat). These allegations give rise to the inference that Cogburn subjectively knew that Coones faced a significant risk of harm. *See Ford v. Anderson County*, 102 F.4th 292, 308 (5th Cir. 2024) (per curiam) (explaining that basic knowledge of inmate's condition gives rise to such an inference).

Despite awareness of the excessive risk, Cogburn disregarded that risk by failing to provide medical treatment other than allowing Coones to temporarily rest on a gurney for some period of time. Although Coones was scared to return to his cell and asked Cogburn to allow him further respite from the heat or other remedial measures, Cogburn called a guard to take him back to his cell. By denying him sufficient treatment despite repeated complaints, Cogburn evidenced a wanton disregard for his needs, and thus, at this point, Plaintiff established a plausible Eighth Amendment violation.

Several cases require our conclusion. In *Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006) (per curiam), the plaintiff had a heart condition, was experiencing severe chest pain, and did not have his prescribed medication. *Id.* at 463. The defendant told him to go to the pharmacy. *Id.* at 463. The pharmacy was closed, so the defendant sent the plaintiff back to his cell without providing any treatment. *Id.* at 463–64. We concluded that the plaintiff stated a clearly established Eighth Amendment claim. *Id.* at 463–65. Here, Cogburn sent Coones back to his cell with essentially no treatment, despite Plaintiff's plausible allegations that Cogburn knew the dire consequences that could—and did—result from her inaction.

9

No. 24-10777

In *Austin v. Johnson*, 328 F.3d 204 (5th Cir. 2003), we concluded that a defendant's two-hour delay in calling an ambulance after the plaintiff became unconscious rose to the level of deliberate indifference. *Id.* at 210. Because of "the serious medical consequences of dehydration, a reasonable person would not have waited nearly two hours to call an ambulance." *Id.* We reached this conclusion even though defendants allowed the plaintiff to cool off inside and provided first aid. *Id.* at 206. Similarly, Cogburn cannot avoid liability because she allowed Coones to rest for some unspecified period of time. *See Ford*, 102 F.4th at 308 n.7 ("Responding to a serious medical issue with such a cursory level of care may still constitute deliberate indifference."); *Lawson v. Dall. Cnty.*, 286 F.3d 257, 263 (5th Cir. 2002) (providing minimal treatment did not preclude an deliberate indifference claim); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999) (inadequate medical care may rise to the level of deliberate indifference); *Ledesma v. Swartz*, No. 97-10799, 134 F.3d 369, 1997 WL 811746, at *1 (5th Cir. Dec. 16, 1997) (per curiam) (unpublished) (treating broken jaw with only over-the-counter pain medication and liquid diet could constitute deliberate indifference); *see also Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989) ("When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."). Additionally, Cogburn sent Coones back to his cell, despite knowing that Coones would experience extreme temperatures in his cell; this would be akin to telling the *Austin* plaintiff suffering from heat stroke to go back outside to continue experiencing the heat. In sum, based on our caselaw, Plaintiff plausibly states an Eighth Amendment claim against Cogburn at this stage of litigation.

Further, these cases described above demonstrate that Cogburn is not entitled to qualified immunity at this early stage of the litigation. "Since *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), state officers have been on notice that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment." *Austin*, 328 F.3d at 210. Cogburn's decision to send

10

Coones back to his overheated cell while she knew he was experiencing symptoms of dehydration and potential heat exhaustion was a violation of clearly established law. Accordingly, Cogburn is not entitled to qualified immunity.

b. Christi Baker

The allegations against Baker are quite shocking. Plaintiff alleges that the day before Coones was found dead, Baker saw Coones rolling around on the ground naked, unable to talk, and surrounded by four untouched trays of food. Instead of providing medical treatment, Baker merely encouraged Coones to get on with his day.

Based on the complaint, Baker plausibly knew of the risk—she knew that the prison was experiencing a hot summer in a state known for annual heat-related illnesses and deaths and that Coones was in medical distress at the time of her visit. Based on the allegations, even a layperson would have identified the danger Coones was in and recognized that Coones needed immediate medical attention. *See Gobert*, 463 F.3d at 345 n.12 (explaining that serious medical needs include those "for which the need is so apparent that even laymen would recognize that care is required"). However, Baker disregarded that risk and provided no treatment, and Coones died within a day. Plaintiff thus states a plausible claim against Baker.

The above-discussed cases illuminate that Baker is not entitled to qualified immunity. Just like in *Easter*, Plaintiff plausibly alleges that Baker knew of the inmate's medical conditions and the severity of the inmate's symptoms yet refused to provide treatment. *See* 467 F.3d at 463. Further, in *Austin*, the defendants at least provided first aid and eventually called an ambulance. 328 F.3d at 206. Here, Baker did nothing—she did not call an ambulance or provide any medical care, and it is reasonable to infer that she never followed up on Coones. Baker could also tell that Coones had been suffering a long time, given that there were four untouched trays of food surrounding him. This also suggests that Coones's heat-related illness was

more dire than the plaintiff's in *Austin*. *See* 328 F.3d at 206 (noting that plaintiff drank two cups of Gatorade at lunch and ate part of his meal and collapsed shortly afterward).

Based on these cases, Baker is not entitled to qualified immunity at this stage because her alleged violation of the Eighth Amendment is contrary to clearly established law.

### c. Remaining Care-Providing Defendants

Plaintiff alleges that Coones informed the remaining Care-Providing Defendants that he was suffering from extreme heat, that Coones sought medical care from these Defendants, but that these Defendants sent Coones back to his cell.[5]

As the district court held, these accusations are conclusory and collective, and do not plausibly state an Eighth Amendment claim. Plaintiff does not allege facts regarding any specific interaction between Coones and the remaining Care-Providing Defendants or whether they provided medical attention. We therefore affirm as to the remaining Care-Providing Defendants.

_____

[5] The entirety of the factual allegations are as follows:

> Christine M. Heady RN, Jennifer A. Aguilar L.V.N., Olivia Herrera, R.N., Susan Boedeker L.V.N., Brad R. Baker M.D., and Chad R. Morris all were aware of the extreme heat conditions at Wallace and that Jace Coones was suffering from the heat as he had informed them and he had presented several times complaining of the heat and showing symptom of overheating to point of being dangerous to his life. Jace sought medical care from each of these individual doctors and nurses, presented increasingly worse and more worrying symptoms of the heat-induced medical problems that ultimately resulted in his death, but was consistently sent back into a cell that these Defendants knew was overheated. The specific interactions between Jace and these Defendants are unknowable at this time due to Jace's death and Hefner's refusal to provide Jace's medical records.

### 3. *Entity Defendants*

We also affirm dismissal of the Eighth Amendment claim against the Entity Defendants.

As to Mitchell County Hospital District, Plaintiff fails to allege any facts that could support a claim against the Hospital.[6]

As to Texas and Texas Tech, the district court correctly concluded that these entities are not "persons" under § 1983, *see Stotter v. Univ. of Tex. at S.A.*, 508 F.3d 812, 821 (5th Cir. 2007), and Plaintiff fails to refute the district court's analysis on appeal, *see Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993) (an appellant "abandon[s] [her] arguments by failing to argue them in the body of [her] brief.").

Finally, as to Mitchell County, Plaintiff failed to plead factual allegations against the County, and Plaintiff does not explain why the district court's decision is erroneous with respect to the County. *See id.*

We thus affirm as to Entity Defendants.

## B. ADA Claims

Plaintiff alleges that Coones's asthma and allergies made him particularly susceptible to the extreme heat, and that Entity Defendants failed to accommodate those disabilities. Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff states a failure-to-accommodate claim if she alleges (1) Coones is a qualified individual with a disability, (2) the

---

[6] The only facts Plaintiff alleges are that "the nurses work by a contract between TDCJ, Mitchell County Hospital District, and Texas Tech University," and that Coones visited Mitchell County Hospital on August 13, 2020. Plaintiff does not appear to allege that anything went wrong during his hospital visit.

covered entity knew about the disability and its consequential limitations, and (3) the entity failed to make reasonable accommodations. *See Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013); *Ball*, 792 F.3d at 596 n.9.

We affirm the district court's dismissal of the ADA claim based on the second element. Plaintiff fails to plausibly allege that the entities "underst[ood] the limitations [Coones] experienced *as a result* of his disability." *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021). Plaintiff has the burden of identifying "the disability, the limitation, and to request an accommodation in direct and specific terms." *Id.* (internal quotation marks and citation omitted). Although Coones complained of the heat, Coones did not connect his complaints to his disabilities or to Entity Defendants. Accordingly, we must affirm.

## C. Medical Malpractice Claim

Finally, Plaintiff asserts a state law medical malpractice claim against the individual Care-Providing Defendants. However, under the Texas Tort Claims Act, "only a governmental unit can be sued for a governmental employee's work-related tortious conduct." *Garza v. Harrison*, 574 S.W.3d 389, 393–94 (Tex. 2019). Because the Care-Providing Defendants are sued here as government employees acting in their official capacities, the district court properly dismissed them. *See DeHorney v. Talley*, 630 S.W.3d 297, 302 (Tex. App.—El Paso 2021, no pet.). Therefore, we affirm the district court's dismissal of the medical malpractice claim as to Care-Providing Defendants.

Plaintiff also asserts that Entity Defendants are also liable, but she does not address the basis of the district court's dismissal of Entity Defendants.

Regarding Texas and Texas Tech, the district court concluded they were entitled to sovereign immunity. "Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court." *Sherwinski v. Peterson*, 98 F.3d 849, 851 (5th Cir. 1996). The Texas Tort

Claims Act waives sovereign immunity in state court, but not federal court. *Id.* at 852.

The district court then dismissed the claim against Mitchell County Hospital District because hospital districts are "governmental unit[s] immune from suit under the TTCA," and Plaintiff failed to plead waiver. *Aguocha-Ohakweh v. Harris Cnty. Hosp. Dist.*, 731 F. App'x 312, 316 (5th Cir. 2018) (per curiam) (citing *Martinez v. Val Verde Cnty. Hosp. Dist.*, 140 S.W.3d 370, 371 (Tex. 2004)).

And finally, the district court dismissed the claim against Mitchell County because Plaintiff failed to allege any facts indicating a valid waiver of governmental immunity.

Plaintiff fails to identify any error in the district court's dismissal of Entity Defendants, and we cannot find one. We thus affirm dismissal of the medical malpractice claim.

## IV.     Conclusion

We REVERSE and REMAND as to the Eighth Amendment claim against Collier, Hefner, Cogburn, and Baker; with respect to all other claims, we AFFIRM.